**UNIVERSAL-RUNDLE CORPORATION,**
Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 14763.

United States Court of Appeals
Seventh Circuit.

Oct. 22, 1965.

Rehearing Denied Dec. 17, 1965.

Rehearing Denied Dec. 17, 1965.
(En Banc).

Frank C. McAleer, James R. Fruchterman, Chicago, Ill., Kahn, Adsit, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., of counsel, for petitioner.

J. B. Truly, Asst. Gen. Counsel, W. Risque Harper, Atty., James McI. Henderson, Gen. Counsel, Miles J. Brown, Attys., F. T. C., Washington, D. C., for respondent.

Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Universal-Rundle Corporation, a Delaware corporation, by its petition asks us to review and set aside an order of the Federal Trade Commission issued on June 12, 1964 and its order issued on August 4, 1964.[1]

Petitioner is a nationwide manufacturer, distributor and seller of plumbing supplies and equipment, including a complete line of "U-R" brand vitreous china and enameled cast-iron plumbing fixtures. In the sale of its products, petitioner has a wholesaler's net price and also a truckload price which is below the wholesaler's net list price. The truckload price is applicable only to the purchases of a truckload or more of fixtures, and the Commission found that the differentials involved are those averaging 10% between truckload prices and the wholesaler's list prices. A truckload order may consist of any combination of fixtures and the discount rate on such truckload purchases varies from order to order, depending on the list and truckload prices of the individual fixtures at time of purchase. As to petitioner, the situation in Philadelphia, Pennsylvania, was that Mars Supply Company, a large dealer, was the only one which bought in

truckloads. In 1957 its four truckload orders amounted to $23,251.23. At petitioner's wholesaler's net price Mars would have paid $25,795.53, indicating a preferential allowance or discount of about 9.9%. On the basis of such testimony the Commission found that Mars competed with nonfavored customers in Philadelphia through its main store and with nonfavored customers in Camden, New Jersey through its branch store, and also that Mars competed with nonfavored dealers in selling directly to the consumer.

The Commission found price discriminations were sufficient "to give the recipients of the lower prices a substantial advantage over their non-favored competitors" and that such discriminations may be substantially to affect customer competition adversely. In its opinion, and by adopting the examiner's decision as modified, the Commission found that competition in the resale of petitioner's "U-R" brand of plumbing fixtures was keen in the Philadelphia-Camden area; that price was a very important competitive factor in the plumbing-fixture business; that the differentials if reflected in the resale price of the products would have been sufficient to divert business from nonfavored customers to Mars; that the margin of profit in the resale of plumbing fixtures appears to be small; and that a 2% cash discount was essential to a profitable operation. The Commission concluded that under the circumstances "competitive injury may be anticipated if [petitioner's] pricing practices with regard to the sale of its U-R line of products are allowed to continue," and that petitioner's discriminations violated Section 2(a) of the Clayton Act, as amended.

In this court the conflict between the legal theories of the parties may now be stated in abbreviated form.

Petitioner argues that the evidence showed a lack of competition at the retail level, which precludes a finding of a violation, and also that competition is not

1. At the conclusion of hearings, the examiner made an initial decision which was modified by the Commission's final order.

adversely affected as a result of price discrimination in a situation wherein all buyers are free to avail themselves of the lower prices if they desire to do so. It relies on the fact that the discounts in question were available to any purchaser buying in truckload quantities.

Petitioner further contends the failure of the "favored" buyer to avail itself of the discounts found to be discriminatory on a substantial portion of its purchase is not irrelevant, as it demonstrates the lack of competitive significance of the discounts themselves.

The argument is further advanced by petitioner that the finding of intense price competition at the "dealer" level leading to probable diversion is unsupported by, and contrary to, the evidence, and it is error to infer the probable competitive impact of a truckload discount by comparing it to a cash discount, because such discounts are entirely dissimilar in an economic sense, and that the amount of discrimination between competing purchasers is too insubstantial to support the finding of violation.

The Commission's final order of June 12, 1964 rejected the examiner's finding that petitioner's sales to its Camden, New Jersey customers were in interstate commerce, but in other respects agreed with the examiner and denied the appeal from his order. It modified the initial decision accordingly and then adopted it on June 12, 1964.

This action was promptly followed by petitioner's filing with the Commission on July 20, 1964 its petition requesting that further action be stayed to permit the Commission sufficient time to investigate and institute whatever proceedings are deemed appropriate by the Commission to correct an *industry-wide* practice by plumbing fixture manufacturers of granting discounts in prices on truckload shipments.

Petitioner there stated:

"* * * Such a stay, when followed by appropriate action by the Commission to place all manufacturers in this industry on the same competitive basis, would avoid the obvious competitive disadvantage and extreme hardship under which respondent [petitioner here] would otherwise have to compete and minimize the probability of any substantial decline in respondent's sales volume which would be a consequence of the Commission's order."

Accompanying the petition were written statements of facts and exhibits indicating that each of the following named competitors of petitioner operates its business on a discount and truckload purchase plan as does petitioner, with however an important exception as to the approximate amount of the average truckload discount allowed by each of said competitors, which the following list shows:

| | Average discount Allowed |
|---|---|
| American Standard [2] | 18.0% |
| Eljer Division of The Murray Corporation of America | 18.0% |
| Rheem Manufacturing Co. | 17.5% |
| Briggs Manufacturing Company | 13.0% |
| Kohler Co. | 18.0% |
| Crane Co. | 18.0% |

———◆———

Petitioner called the Commission's attention to the fact that this evidence shows that its competitors use price differentials *far in excess* of the average

2. It appears to be a division of American Radiator & Standard Sanitary Corporation.

truckload discount granted by petitioner, as disclosed by the record in this proceeding.

The sworn petition for withdrawal of the order of the Commission also shows that the respective shares of the market enjoyed by the seven principal manufacturers of plumbing fixtures in the United States are, as follows:

| | | |
|---|---|---|
| 1. | American Radiator & Standard Sanitary Corporation | 32.0% |
| 2. | Kohler Co. | 15.0% |
| 3. | Eljer Division of The Murray Corporation of America | 10.0% |
| 4. | Crane Co. | 9.0% |
| 5. | Briggs Manufacturing Company | 6.0% |
| 6. | Universal-Rundle Corporation | 5.75% |
| 7. | Rheem Manufacturing Co. | 5.0% |

---

However, the petition of July 20, 1964 was denied on August 4, 1964.

It is apparent that the Commission has directed its attack against a general practice which is prevalent in the industry. However, it has not aimed at the entire industry or at any of the largest manufacturers in the group. It has selected one whose share of the market is less than 6%, although the practice complained of is common to the industry. The obvious injustice of this method of reaching an industry-wide problem lies, not only in the selection of one of the smallest participants marketwise as a target, but also in the fact that the target selected is charged with allowing an average truckload discount of 10% when its competitors are granting average truckload discounts running between 13% and 18%.

■ This inequitable approach to the solution of an antitrust problem, submitted to us because of the action of the Federal Trade Commission in centering this proceeding solely on petitioner, was unjustified. Its contrary determination was a patent abuse of discretion and must be overturned. Moog Industries v. Federal Trade Commission, 355 U.S. 411, 414, 78 S.Ct. 377, 2 L.Ed.2d 370. We cannot, in the name of an antitrust prosecution, lend our support to the sacrifice of a comparatively small manufacturer, when its larger and more guilty competitors are not prosecuted.

■ We are not convinced that the Clayton Act requires us to approve the imposition of sanctions upon only one of the smallest of a group of law violators. If we did, the giants in the field would be the real benefactors—not the public.

No reason is apparent why the Commission did not bring in these larger competitors and seek a final decree covering all of them. They are not numerous. The industry is, according to the record, limited to a few. This case is thus distinguishable from E. Edelmann & Co. v. Federal Trade Commission, 7 Cir., 239 F.2d 152 (1956); cert. denied 355 U.S. 941, 78 S.Ct. 426, 2 L.Ed.2d 422 (1958). Moreover, in that case it appears, at 156, that the discount system employed by petitioner Edelmann was not the same as that of its two principal competitors and Edelmann did not establish that its lower price was made in good faith to meet a competitor's equally low price.

The Commission now relies on C. E. Niehoff & Co. v. Federal Trade Commission, 241 F.2d 37 (1957) where we stayed the effective date of a Commission order, under the circumstances of that case, and its subsequent reversal, sub nom. Moog Industries v. Federal Trade Commission, supra. While we had affirmed the Com-

mission's determination of statutory violation, we directed that the cease and desist order should take effect "at such time in the future" as we might direct and hence our order was reversed, as aforesaid. The Supreme Court, at 414, recognized that, if the Commission had patently abused its discretion in determining that its order should not be held in abeyance until respondent's competitors were proceeded against, a court of appeals might overturn the Commission's determination. That is the situation now before us.

Counsel for the Commission admit in their brief in this court "petitioner submitted specific information to the Commission tending to show current violation of Section 2(a) by two of its competitors" and that it also was "conducting another investigation of one of the companies, which, *although not involving* Section 2 (a) of the *Clayton Act,* might indicate whether that section was being violated." (Italics added.) This brought about the investigation by the antitrust division of the Department of Justice of those two competitors.

▪ In the case at bar, it appears that, by letter dated *April 19, 1965,* Commission counsel wrote to petitioner's counsel herein that the reason the Commission would not *then* undertake any industry-wide investigation of petitioner's competitors was that such an investigation "would conflict with an investigation *now* being conducted by the Antitrust Division of the Department of Justice". We are not impressed by this reference to a belated investigation conducted in *1965* which was many months after the proceeding before the Commission occurred and the entry of the orders of the Commission which we are now reviewing. Even if not tardy, such an investigation by the Department of Justice does not qualify as an investigation by the Commission, which, in our opinion, was the agency which was called upon to act in all matters pertaining to the case at bar. We hold that the duty of the Commission to bring into the case before it petitioner's powerful competitors could not be excused or condoned by the Commission asserting, after it had by its order condemned petitioner, that a branch of the executive department of the government had commenced an investigation.

An investigation of an industry is germane to a proceeding before the Commission, and it has a duty to so investigate in a proper case. We have already indicated our view that petitioner's showing was sufficient to require the Commission to make petitioner's competitors parties thereto. The Commission was the proper forum to receive and act upon the result of such an investigation. Recently, in an address before the Bar Association of the District of Columbia, Commissioner Jones (of the present Commission) stated February 25, 1965:

"Industry-wide enforcement of the law is almost a constitutional imperative as a matter both of fairness and equality before the law. It is clear that we have no right to and could not permit some law violators to go free while prosecuting others. \* \* \* "

For the reasons herein set forth, the order of the Commission entered August 4, 1964 is set aside and this cause is remanded for further proceedings as prayed in the petition of Universal-Rundle Corporation filed July 20, 1964. We reserve our ruling on the petition to set aside the final order of June 12, 1964.

Order of August 4, 1964 set aside and cause remanded, with instructions. Ruling reserved as to order of June 12, 1964.