FEDERAL TRADE COMMISSION *v.* UNIVERSAL-
RUNDLE CORP.

No. 101.   Argued March 13, 1967.—Decided May 29, 1967.

*Robert S. Rifkind* argued the cause for petitioner. With him on the briefs were *Solicitor General Marshall, Assistant Attorney General Turner, Howard E. Shapiro, Milton J. Grossman, James McI. Henderson* and *W. Risque Harper.*

*Frank C. McAleer* argued the cause for respondent. With him on the brief was *James R. Fruchterman.*

Mr. Chief Justice Warren delivered the opinion of the Court.

The question presented by this case is whether the Court of Appeals exceeded its authority as a reviewing court by postponing the operation of a Federal Trade Commission cease-and-desist order against respondent until an investigation should be made of alleged industry-wide violations of the price discrimination provisions of the Clayton Act, § 2, 38 Stat. 730, as amended by the Robinson-Patman Act, 49 Stat. 1526, 15 U. S. C. § 13.

Respondent Universal-Rundle produces a full line of china and cast-iron plumbing fixtures which it sells to customers located throughout the United States. In 1960, the Federal Trade Commission issued a complaint charging that for more than three years Universal-Rundle's sales to some of these customers had been made "at substantially higher prices than the prices at which respondent sells such products of like grade and quality to other purchasers, some of whom are engaged in competition with the less favored purchasers in the resale of such products." The effect of the discriminations, the complaint alleged, "may be substantially to lessen competition" in violation of § 2 (a) of the Clayton Act, as amended. In its answer, Universal-Rundle denied the essential allegations of the complaint, and, in addition, asserted as affirmative defenses that such price differentials as may have existed were cost justified or were made "in good faith to meet competition."

After evidentiary hearings, in which Universal-Rundle made no effort to sustain its affirmative defenses, the Commission found that during 1957 Universal-Rundle had offered "truckload discounts" averaging approximately 10% to all of its customers. Because some of these customers could not afford to purchase in truckload quantities, and thus were unable to avail them-

selves of the discounts, the Commission held that the offering of the truckload discounts constituted price discrimination within the meaning of § 2 (a) of the Clayton Act, as amended. Since some Universal-Rundle customers who were able to purchase in truckload quantities were found to be in competition with customers unable to take advantage of the discounts, the Commission concluded that Universal-Rundle's price discrimination had the anticompetitive effect proscribed by § 2 (a).[1] Accordingly, it ordered Universal-Rundle to refrain from:

> "Discriminating in price by selling 'Universal-Rundle' brand or Universal-Rundle manufactured plumbing fixtures . . . of like grade and quality to any purchaser at prices higher than those granted any other purchaser, where such other purchaser competes in fact with the unfavored purchaser in the resale or distribution of such products."

At no time during the four years in which the complaint was pending did Universal-Rundle offer the Commission any information as to its competitors' pricing practices or suggest that industry-wide proceedings might be appropriate. But one month after the issuance of the cease-and-desist order, Universal-Rundle petitioned the Commission to stay its cease-and-desist order for a time sufficient "to investigate and institute whatever proceedings are deemed appropriate by the Commission to correct the industry-wide practice by plumbing fixture manufacturers of granting discounts in prices on truckload shipments." In support of its petition, Universal-Rundle submitted affidavits and documents tending to show: (1) that its principal competitors were offering truckload discounts averaging approximately 18%; (2) that

---

[1] The Commission's opinion is reported in Trade Reg. Rep., 1963–1965 Transfer Binder, ¶ 16,948.

Universal-Rundle's share of the plumbing fixture market, exclusive of its sales to Sears, Roebuck and Co., was 5.75% whereas the five leading plumbing manufacturing concerns enjoyed market shares of 6 to 32%; [2] and (3) that each of these five competitors had reported profits within the preceding two years whereas Universal-Rundle had sustained substantial losses during each of the preceding three years. In addition, Universal-Rundle submitted an affidavit in which its marketing vice president declared on information and belief that some of Universal-Rundle's competitors were selling to customers who "may not purchase in truckload quantities." The vice president further averred:

> "That based upon his knowledge of the competitive conditions in this industry, if respondent is not permitted to sell plumbing fixtures with a differential in price as are its competitors on truckload and less than truckload quantities, respondent's sales of plumbing fixtures under the 'U/R' brand will be substantially decreased and lost to its competitors, who continue to offer substantial discounts on truckload shipments. And he is of the further belief [that] the Company may suffer further substantial financial losses if it must be the sole plumbing fixture manufacturer under an order to cease and desist."

---

[2] According to respondent's petition for a stay, the shares enjoyed by its principal competitors were:

|  | Percent |
|---|---|
| American Radiator & Standard Sanitary Corp | 32 |
| Kohler Co | 15 |
| Eljer Division of the Murray Corp. of America | 10 |
| Crane Co | 9 |
| Briggs Manufacturing Co | 6 |
| Rheem Manufacturing Co | 5 |

In a unanimous decision denying the petition for the stay, the Commission held that a general allegation that competitors were offering truckload discounts was not a sufficient basis for instituting industry-wide proceedings or for withholding enforcement of the cease-and-desist order. Noting that respondent's petition appeared to be premised on the contention that truckload discounts had been held to be *per se* illegal, the Commission wrote, "There is nothing in our decision to support this contention, . . . nor does the order to cease and desist entered against respondent absolutely prohibit it from granting truckload discounts." While the granting of such discounts may result in price discriminations having proscribed anticompetitive effects, "the practice is not necessarily illegal as indicated in respondent's petition." In each case, it must be determined:

> "whether the discount creates a price difference, whether the recipient of such a discount is competing at the same functional level with a customer paying a higher price, whether the customer buying in less than truckload quantities is able to avail itself of the truckload discount, and whether the differential is sufficient in the competitive conditions shown to exist to have the requisite anticompetitive effects." [3]

"Moreover," the Commission wrote, "the fact that respondent may have incurred losses prior to the issuance of the order does not support the contention that enforcement of the order will cause it financial hardship." [4]

---

[3] The Commission further noted that "even if a prima facie violation of Section 2 (a) is established, the seller may in each case interpose the statutory defenses to justify the discrimination." Trade Reg. Rep., 1963–1965 Transfer Binder, ¶ 16,998, at 22,070.

[4] *Ibid.*

Following denial of its petition for a stay, Universal-Rundle instituted review proceedings in the Court of Appeals for the Seventh Circuit. Without reaching the merits of the petition to set aside the cease-and-desist order, the court below set aside the Commission's order denying the stay and remanded the cause with instructions that the Commission conduct an industry investigation. 352 F. 2d 831 (1965). The court conceded that under *Moog Industries* v. *Federal Trade Commission,* 355 U. S. 411 (1958), the Federal Trade Commission's discretionary determination to refuse to stay a cease-and-desist order "should not be overturned in the absence of a patent abuse of discretion." 355 U. S., at 414. But it considered that Universal-Rundle's evidentiary offering was sufficient to demonstrate that the refusal to grant the requested stay constituted a patent abuse of discretion. The premises upon which the court below based its conclusion may be briefly restated: (1) "[i]t is apparent," the court wrote with reference to the evidentiary offering, "that the Commission has directed its attack against a general practice which is prevalent in the industry"; (2) enforcement would lead to the "sacrifice" of one of the "smallest participants" in the industry; and, consequently, (3) approval of the enforcement sanctions would be contrary to the purposes of the Clayton Act since "the giants in the field would be the real benefactors— not the public."

In *Moog Industries* v. *Federal Trade Commission, supra,* we set forth the principles which must govern our review of the action taken by the court below: The decision as to whether to postpone enforcement of a cease-and-desist order "depends on a variety of factors peculiarly within the expert understanding of the Commission." 355 U. S., at 413. Thus, "although an alleg-

edly illegal practice may appear to be operative throughout an industry, whether such appearances reflect fact" is a question "that call[s] for discretionary determination by the administrative agency." *Ibid.* Because these determinations require the specialized experienced judgment of the Commission, they cannot be overturned by the courts "in the absence of a patent abuse of discretion." 355 U. S., at 414. Consequently, the reviewing court's inquiry is not whether the evidence adduced in support of a petition for a stay tends to establish certain facts, such as that the industry is engaged in allegedly illegal price discrimination practices; rather, the court's review must be limited to determining whether the Commission's evaluation of the merit of the petition for a stay was patently arbitrary and capricious.

Viewed in the light of these principles, the decision below must be reversed. The evidence which Universal-Rundle offered in its petition for a stay is so inconclusive that it cannot be said that the Commission's evaluation of the evidence, and its consequent refusal to grant the stay, constituted a patent abuse of discretion. Indeed, Universal-Rundle's evidence does not even support the improper *de novo* findings which formed the basis for the Court of Appeals' decision. Universal-Rundle's truckload discounts were held to be illegal only because the corporation sold fixtures to one group of customers who were unable to purchase in truckload quantities while simultaneously selling fixtures at a discount to another group of customers who were in competition with the nonfavored group. Since the evidence presented in the petition for a stay did not tend to show that the discounts offered by Universal-Rundle's competitors had such an anticompetitive effect, there was no basis for a conclusion that the practice held illegal by the Commission was prevalent throughout the plumb-

ing industry. Similarly, the unsupported speculation of Universal-Rundle's vice president as to the pecuniary effect of enforcement of the cease-and-desist order does not provide a sufficient basis for a finding that Universal-Rundle would be "sacrificed" or even that it would suffer substantial financial injury. It follows that Universal-Rundle has failed to demonstrate that enforcement would be contrary to the purposes of the Clayton Act.

We note that even if a petitioner succeeded in demonstrating to the Commission that all of its competitors were engaged in illegal price-discrimination practices identical to its own, and that enforcement of a cease-and-desist order might cause it substantial financial injury, the Commission would not necessarily be obliged to withhold enforcement of the order. As we stated in *Moog Industries*, 355 U. S., at 413:

> "It is clearly within the special competence of the Commission to appraise the adverse effect on competition that might result from postponing a particular order prohibiting continued violations of the law. Furthermore, the Commission alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically."

On the other hand, as the *Moog Industries* case also indicates, the Federal Trade Commission does not have unbridled power to institute proceedings which will arbitrarily destroy one of many law violators in an industry. This is not such a case. The Commission's refusal to withhold enforcement of the cease-and-desist order against respondent was based upon a reasonable evaluation of the merits of the petition for a stay; thus it was

not within the scope of the reviewing authority of the court below to overthrow the Commission's determination. Consequently, we reverse the judgment below, set aside the stay, and remand the cause for further proceedings consistent with this opinion.[5]

*It is so ordered.*

---

[5] We are informed by the parties that after the Commission's refusal to grant the stay, the respondent presented some evidence to the Commission staff which was relevant to the anticompetitive effects of the discounts offered by two of its competitors. Apparently relying on this evidence, the court below ruled that the Commission was obliged to conduct its own industry investigation and that the pendency of a Department of Justice antitrust investigation of the industry did not relieve the Commission of this responsibility. Since the post-proceeding evidence was not properly before the court below on a petition for review and is not in the record here, we do not reach, and the court below should not have reached, the questions of whether an industry investigation was necessitated by the additional evidence or whether such an investigation would be unnecessary in light of the Department of Justice investigation.