**RABINER & JONTOW, INC., a corporation now known as Abbe Rabiner, Inc., Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 35, Docket 30915.**

United States Court of Appeals Second Circuit.

Argued Sept. 21, 1967.

Decided Dec. 5, 1967.

Erwin Feldman, New York City, for petitioner.

Jerold D. Cummins, Washington, D. C (James McI. Henderson, J. B. Truly, Federal Trade Commission, Washington, D. C., on the brief), for respondent.

Before WATERMAN, MOORE and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

In 1961, the Federal Trade Commission (the Commission) began an investigation into alleged discrimination between competing customers in the granting of advertising and other promotional allowances by garment manufacturers. The result of this investigation was an invitation by the Commission to 310 of these manufacturers, offering them an opportunity to sign consent agreements to cease and desist from granting discriminatory allowances. Although 298 manufacturers signed, petitioner, a manufacturer of women's coats and suits which retail from $70.00 to $90.00, and several others refused. The Commission thereupon issued a formal complaint, alleging that petitioner had violated Section 2(d) of the amended Clayton Act, 15 U.S.C. § 13(d),[1] by granting advertising and promotional allowances to some customers without making such allowances available to other competing customers

---

1. Section 2(d) provides:

That it shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

on proportionally equal terms.[2] The hearing examiner issued an initial decision and cease and desist order sustaining the allegations of the complaint and holding that petitioner had failed to establish its defense that the advertising allowance payments were made in good faith to meet competition. The Commission, Commissioner Elman dissenting, affirmed the decision and order of the examiner.

On appeal to this court, petitioner no longer disputes the Commission's finding that it violated Section 2(d) of the Clayton Act. Instead, petitioner urges that the cease and desist order be set aside because it was an abuse of the Commission's discretion to proceed against it while there remains a large number of others engaged in the same illegal practice. Petitioner argues that the Commission acted arbitrarily in issuing the cease and desist order while petitioner's competitors are free to continue their prior practice.

■■ There have been no instances where a complaint has been dismissed or an order set aside simply because it was directed against a single respondent in the face of evidence of industry-wide violations. The most petitioner could hope to obtain from this court is a stay of enforcement of the cease and desist order. Two Supreme Court decisions suggest that, in a proper case, a stay may be obtained until the Commission can conduct a larger investigation and gain more complete compliance. This, however, is not such a case.

In Moog Industries, Inc. v. Federal Trade Commission, 355 U.S. 411, 78 S. Ct. 377, 2 L.Ed.2d 370 (1958) (*per curiam*), the Supreme Court refused to grant a stay of an order against one firm until competing firms could be similarly restrained. There the Court noted the peculiar discretion given to the Commission in the shaping of its remedies.

"In view of the scope of administrative discretion that Congress has given the Federal Trade Commission, it is ordinarily not for courts to modify ancillary features of a valid Commission order. This is but recognition of the fact that in the shaping of its remedies within the framework of regulatory legislation, an agency is called upon to exercise its specialized, experienced judgment. Thus, the decision as to whether or not an order against one firm to cease and desist from engaging in illegal price discrimination should go into effect before others are similarly prohibited depends on a variety of factors peculiarly within the expert understanding of the Commission. Only the Commission, for example, is competent to make an initial determination as to whether and to what extent there is a relevant 'industry' within which the particular respondent competes and whether or not the nature of that competition is such as to indicate identical treatment of the entire industry by an enforcement agency. Moreover, although an allegedly illegal practice may appear to be operative throughout an industry, whether such appearances reflect fact and whether all firms in the industry should be dealt with in a single proceeding or should receive individualized treatment are questions that call for discretionary determination by the administrative agency. It is clearly within the special competence of the Commission to appraise the adverse effect on competition that might result from postponing a particular order prohibiting continued violations of the law. Furthermore, the Commission alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and

---

2. The parties entered into stipulations to the effect that during the period in question advertising allowances were granted to six favored customers in three cities and were not paid to other competing customers in those cities who purchased identical goods from petitioner. The favored customers were large retail stores in New York City, Boston and Washington, D.C.

economically." 355 U.S. at 413, 78 S. Ct. at 379.

In Universal-Rundle Corp. v. Federal Trade Commission, 352 F.2d 831 (7th Cir. 1965), the Court of Appeals ordered that a cease and desist order be stayed until further action could be taken against the respondent's competitors. Although the discriminatory price discounts of that case were prevalent in the industry, the Commission selected for enforcement Universal-Rundle which had only 6% of the market and which was granting relatively smaller discounts than its competitors. The Supreme Court reversed, 387 U.S. 244, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967), and set forth some guide lines for review in this area.

"* * * Consequently, the reviewing court's inquiry is not whether the evidence adduced in support of a petition for a stay tends to establish certain facts, such as that the industry is engaged in allegedly illegal price discrimination practices; rather, the court's review must be limited to determining whether the Commission's evaluation of the merit of the petition for a stay was patently arbitrary and capricious." 387 U.S. at 250, 87 S.Ct. at 1626.

In the facts of the particular case before us, there is no indication that the Commission acted arbitrarily in proceeding against petitioner. An extensive industry-wide investigation was conducted and almost 300 consent orders were obtained before the present action was taken. The Commission held public hearings on how enforcement could best be achieved and various proposals were submitted from industry representatives. Even then, the Commission considered the possible competitive disadvantage its orders might have and waited until 1965 to make those orders effective. Abby Kent Co., et al., FTC Docket No. C-328 et al. (August 9, 1965), CCH Trade Reg. Rep. (1965–1967 Transfer Binder) ¶ 17,301 at p. 22,461. At that time the Commission noted:

"* * * For the most part this phase of the wearing apparel inquiry is ter-minated. The few unresolved matters do not involve suppliers who constitute a force capable of competitively disadvantaging those industry members who will be under the order." at p. 22,464.

Far from acting in an "arbitrary" manner, the Commission appears to have made every effort to achieve industry-wide compliance in as equitable a manner as possible under the circumstances.

Petitioner insists that a proper determination of the relevant market will reveal that the garment industry is really a group of approximately 20 different kinds of men's and women's wear manufacturers, none of which compete with each other. Under petitioner's classification, it is in the *women's coat and suit* industry which numbers about five hundred firms. Of those firms, petitioner claims that it was one of only 7 or 8 involved in the Commission's complaint. The evidence as to the proper market division is not at all clear but, assuming petitioner's contention to be true, we still do not think there is a basis for finding that the Commission acted arbitrarily. Petitioner has not shown that violations of Section 2(d) are prevalent in that segment of the industry in which it operates. Its own expert witness testified only that "It was very widespread among top manufacturers and top stores," and that he would place petitioner "towards the top." Petitioner relies upon a statement issued by the Commission in 1962 that its investigation revealed "widespread violations." However, this observation was made *prior* to the time the Commission entered into the almost 300 cease and desist orders and does not support a contention that the same conditions continue to exist.

Petitioner has failed to show that compliance with the Commission's order will place it at a competitive disadvantage. Although petitioner alleges that widespread violations do in fact remain in the industry, it has never provided the Commission with names or other information upon which the Commission

could take appropriate action. The Commission is continuing to take action against violators. See, e. g., Clarise Sportswear Co., Inc., FTC Docket No. C-993 (consent order, September 20, 1965); May Knitting Company, Inc., FTC Docket No. C-994 (consent order, September 20, 1965); Huddlespun, Inc., FTC Docket No. C-995 (consent order, September 20, 1965); Dan Millstein, Inc., FTC Docket No. C-1020 (consent order, December 7, 1965); Susan Thomas, Inc., FTC Docket No. C-1185 (consent order, March 20, 1967); Gladstone-Arcuni, Inc., FTC Docket No. 8664 (hearing examiner's order issued February 10, 1967).

■ Furthermore, the "good faith meeting of competition" defense provided in Section 2(b) of the Clayton Act,[3] is "implicit in every order issued under the authority of the Act, just as if the order set [it] out *in extenso*." Federal Trade Commission v. Ruberoid Co., 343 U.S. 470, 476, 72 S.Ct. 800, 96 L.Ed. 1081 (1952). Even though petitioner is under a cease and desist order, it is free to establish its own nondiscriminatory promotional plan and, when necessary, offer certain customers the same amount as a competitor whose allowance it may have to meet. This would minimize any competitive disadvantage. Petitioner argues, however, that it should be free from the Commission's order and be permitted to grant disproportionate allowances to meet competition generally without showing that any particular payment was made to meet a specific competitor's offer. Were such a practice to be approved, the very purpose of Section 2(d) would be frustrated.

■ For the foregoing reasons, the Commission's order is affirmed.

The Commission has filed with this court a formal cross-application for enforcement of the order under Rule 13(e) of the Rules of this Court. This was done in accordance with our instructions in William H. Rorer, Inc. v. Federal Trade Commission, 374 F.2d 622, 627 n. 9 (2d Cir. 1967).

> "Only on the last page of its brief has the Commission made a cross-application for enforcement of its order pursuant to 15 U.S.C. § 21(c). We hold this application to be legally sufficient, but in the future the Commission should follow the orderly procedure for such an application set forth in our rules. Rule 13(e), Rules of the United States Court of Appeals for the Second Circuit."

The Commission urges that both the wording and history of Section 11(c) of the Clayton Act, 15 U.S.C. § 21(c), show that the intendment was that a court order of enforcement be entered automatically upon affirmance of the Commission's order. The relevant portion of the statute reads:

> "* * * To the extent that the order of the commission or board is affirmed, the court shall issue its own order commanding obedience to the terms of such order of the commission."

■ Prior to its amendment by the Finality Act of 1959, Section 11 specifically required the Commission to file an application for enforcement before the Commission could obtain a court decree compelling obedience to its order. The purpose of the Finality Act of 1959, was to amend Section 11 of the Clayton Act to conform it to the procedures of Section 5(c) of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45(c). Federal Trade Commission v. Jantzen, Inc., 386 U.S. 228, 231, 87 S.Ct. 998, 18 L.Ed.2d 11 (1967). Section 5(c) of the Federal Trade Commission Act does not require a cross-application for enforcement.

---

**3.** The relevant portion of Section 2(b) provides:

> That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor.

"[W]hen review is sought, if the Commission is affirmed, the Court of Appeals, pursuant to § 5(c) of the Act, 'shall thereupon issue its own order commanding obedience to the terms of such order of the Commission.' Thus it is not the Commission which requests an enforcement order from the reviewing court. One is entered automatically." United States v. Standard Distributors, Inc., 267 F.Supp. 7, 11 (N.D.Ill. 1967).

We are told by the Commission's counsel that no other circuit court requires the Commission to make a cross-motion for enforcement. Accordingly we hold that a cross-application for enforcement is not required by the amended Clayton Act and that our Rule 13(e) is not applicable. To the extent that William H. Rorer, Inc. v. Federal Trade Commission, supra, is to the contrary, it is overruled.[4]

The Commission's order is affirmed and enforced.

---

4. This opinion has been submitted to all members of the Court and they are in accord with this result.