DAN–AIR SERVICES, LTD., Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent.

BRITISH MIDLAND AIRWAYS, LTD., Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent.

BRITISH MIDLAND AIRWAYS, LTD., Appellant,

v.

CIVIL AERONAUTICS BOARD.

Nos. 72–1666, 72–1786, 72–1770.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 1972.

Decided March 15, 1973.

Paul Reiber, Washington, D. C., with whom Herbert A. Rosenthal, Washington, D. C., was on the brief, for appellant in No. 72–1770 and petitioner in No. 72–1786.

Warren Sharfman, Associate General Counsel, Civil Aeronautics Board, with whom R. Tenney Johnson, General Counsel, O. D. Ozment, Deputy General Counsel, Robert L. Toomey, Atty., Civil Aeronautics Board, and Howard E. Shapiro, Atty., Department of Justice, were on the brief for respondent in No. 72–1666 and 72–1786 and appellee in No. 72–1770.

Before McGOWAN and MacKINNON, Circuit Judges, and WYZANSKI*, Senior United States District Judge for the District of Massachusetts.

PER CURIAM:

Dan-Air Services, Ltd. (Dan-Air) and British Midland Airways, Ltd. (BMA) are foreign air carriers authorized to engage in charter operations between the United States and England. They seek review of Civil Aeronautics Board Order 72–6–59 which implements a condition in their operating authority by requiring that they (and another carrier) file for advance approval of all passenger charter flights at least 25 days prior to flight date, and forbidding the operation of a charter flight for which such approval has not been obtained. The case also involves an appeal by BMA from the District Court's denial of BMA's motion for preliminary injunction seeking to restrain enforcement of the same Board order pending final disposition of a complaint for a permanent injunction filed in that court by BMA more than a month prior to its petition for statutory review.[1]

Lester M. Bridgeman, Washington, D. C., with whom Jeffrey M. Lang, Washington, D. C., was on the brief for petitioner in No. 72–1666.

---

\* Sitting by designation pursuant to 28 U.S. C. § 294(d) (1970).

1. The Board's order was issued on June 14, 1972, and became effective the next day. BMA's complaint in the District Court was filed July 6 and on the same day that court issued a temporary restraining order. On July 18 the District Court denied BMA's motion for preliminary injunction, but on July 20 it granted a 30-day injunction pending appeal. BMA perfected its appeal on August 11 and on the same day moved this court for a fur-

The authority of Dan-Air and BMA to operate into and out of the United States is derived from foreign air carrier permits issued pursuant to orders of the Board entered under section 402 of the Federal Aviation Act (49 U.S.C. § 1372) after approval by the President under section 801 (49 U.S.C. § 1461).[2] These permits authorize the carriers to conduct operations between points in the United States and the United Kingdom, limited exclusively to charter flights as defined in Part 214 of the Board's Economic Regulations.[3] Condition (4) of appellants' operating permits provides as follows:

(4) The exercise of the privileges granted by this permit, except with respect to inclusive tour charters, shall be subject to the provisions of Part 214 of the Board's Economic Regulations, and all amendments and revisions thereof as the Board, by order or regulation and without hearing, may adopt. (J.A. 23, 60.)

Part 214 contains the definitions and regulations governing operations by the holders of all foreign air carrier permits which authorize charter transportation only.[4] The regulations applicable to pro rata charters embody the concept of "affinity" of the passengers which the Board has applied for years in drawing the line between bona fide charters and individually ticketed service offered to the public at large.[5] To aid in effectuating this concept, the regulations require the carriers to obtain from the chartering organization "statements of supporting information" in the form prescribed by the appendix to Part 214, designed to demonstrate to the carriers' satisfaction that the charter participants are indeed eligible for charter transportation. The carriers must obtain this information "at such time as required by the carrier to afford it due time for review thereof" (14 C.F.R. 214.22 and 214.37), and as a general rule the regulations require that the carrier obtain it 30 days prior to departure of the flight in question (14 C.F.R. 214.12(a)).

These regulations are designed to maintain the "affinity" concept which has proven to be inherently difficult to enforce and administer, both for the

ther injunction pending disposition of the appeal and on August 18 we granted the requested stay. The petition for statutory review of the Board's order was filed August 16.

2. Dan-Air's permit was issued pursuant to Order 70-10-137 which was approved by the President on October 27, 1970. BMA's was issued pursuant to Order 70-6-3, approved by the President on May 28, 1970.

3. 14 C.F.R. 214.

4. "Charter" is a term denoting a fundamental distinction between group travel and individually ticketed travel by passengers drawn from the general public. It is not defined by the Act and is thus subject to refined definition and regulation by the Board. Trans International Airlines v. C. A. B., 139 U.S.App.D.C. 174, 432 F.2d 607 (1970) ; American Airlines v. C. A. B., 125 U.S.App.D.C. 6, 365 F.2d 939 (1966) ; American Airlines v. C. A. B., 121 U.S.App.D.C. 120, 348 F. 2d 349 (1965).

5. To this end, the regulations require that the "charter group" i. e., "that body of individuals who shall actually participate in the charter flight" (14 C.F.R. 214.2 (h)) be derived from the membership (or immediate families of members) of an organization, club or other entity. Persons who have joined the organization "merely to participate in the charters" are not deemed to be bona fide members of the chartering organization (14 C.F.R. 214.30(b)(1)) and persons who have not been members of the organization for six months prior to the charter flights are not bona fide members (14 C.F.R. 214.30(b) (2)). Moreover, the regulations provide that the organization must maintain a central membership list available for inspection by the carrier to insure that the participants in the flight are limited to actual members of the organization and their immediate families and to insure that they have been members for the requisite period of time (14 C.F.R. 214.31). Finally, carriers such as petitioners are forbidden to carry persons solicited "under circumstances in which the services are advertised in mass media, whether or not the advertisement is addressed to members of a specific organization, and regardless of who places or pay for the advertising." (14 C.F.R. 214.30(a)(1)).

Board and for the individual carriers. In further seeking to prevent the formation of spurious organizations solely for the purpose of obtaining individual transportation in the guise of affinity charters, the Board has inserted in the operating authority of all foreign air carriers engaging in charter operations the following condition:

(5) The Board, by order or regulation and without hearing, may require advance approval of individual charter trips conducted by the holder pursuant to the authority granted by this permit, if it finds such action to be required in the public interest. (J.A. 23, 60.)

This condition was contained in the petitioners' permits at the time of their issuance and received their unqualified acceptance.

On June 14, 1972, the Board determined (as it had three months earlier in the case of two other carriers) that it was indeed in the public interest to invoke the advance approval condition in the petitioners' permits as well as that of a third foreign air carrier. The Board stated that it had

substantial reason to believe that BMA [and] Dan-Air . . . may be *regularly engaging in foreign air transportation under terms and conditions not in conformity with Part 214* in that, *inter alia*, persons are being transported who do not qualify for charter transportation authorized under Part 214. For example, several of the Board's own employees, responding to public solicitation and mass media advertising, recently bought passage at a fixed price and participated in a number of charter flights operated by those carriers even though those employees did not meet any of the charter eligibility requirements of Part 214. None of the employees who

sought the transportation were refused it. (Order 72–6–59.)

While the Board expressly disclaimed any accusation or determination that petitioners (or the other carrier involved) had knowingly violated the terms of their permit, it was the Board's judgment that "the circumstances are such that the public interest in protecting the integrity of the Board's regulations which were adopted pursuant to law and in assuring that the carriers' future operations comply with the permits the Board has granted them" required petitioners (and the other carrier) to obtain advance approval for all passenger charters to be operated into or out of this country on and after July 15, 1972. The order requires that petitioners submit a request for advance approval to the Board's Bureau of Operating Rights at least 25 days (reducible to 10 days upon a showing of good cause) prior to the proposed operation of the particular flight for which approval is requested.[6]

Dan-Air did not seek reconsideration, however BMA did. The Board denied BMA's petition for reconsideration (Order 72–7–44), finding BMA's contentions unsupportable and unconvincing. It found, among other things, that the requirement would not be burdensome assuming, as BMA assured the Board was the case, that the carrier was complying with the regulations, because "all of the information which they are being required to submit to the Board is being prepared by them in any event" in accordance with the regulations. The Board also concluded that there was no reason for the market to avoid carriers subject to prior approval because there was no reason to fear disapproval of valid charters.

■ In reviewing the Board's actions, we note preliminarily that the specific terms of condition (5) are beyond the

6. The order was not applicable to "inclusive tour charters" since prior affinity is not required for such charters. It may also be noted that the Board has recently provided for a new kind of charters, "travel group charters," which, like inclusive tour charters, do not require that the participants have prior affinity. See SPR–61, September 27, 1972.

jurisdiction of this court to review, since section 1006(a) of the Federal Aviation Act (49 U.S.C. § 1486(a)) explicitly excepts from this court's review "any order in respect of any foreign air carrier subject to the approval of the President as provided in section 801 of this Act,"[7] Indeed Dan-Air expressly concedes the validity of condition (5).[8] The permits issued to petitioners were such orders under section 801[9] and were duly approved by the President.[10] Accordingly, review of such orders in respect of foreign air carriers is clearly precluded by statute. Pan American World Airways v. C.A.B., 129 U.S.App. D.C. 159, 169, 392 F.2d 483, 493 (1968); British Overseas Airways Corp. v. C.A. B., 113 U.S.App.D.C. 76, 304 F.2d 952 (1962); see also C.A.B. v. Donaldson Lines, 343 F.Supp. 1059 (S.D.N.Y.1972) (appeal pending). Moreover, under traditional equity principles, review is inappropriate. Petitioners accepted their permits containing condition (5) without objection and have enjoyed the benefits conferred by those permits for approximately two years. In these circumstances petitioners should not now be heard to complain of the terms and conditions upon which they were granted the right to operate. F.P.C. v. Colorado Interstate Gas Co., 348 U.S. 492, 502, 75

S.Ct. 467, 90 L.Ed. 583 (1955); see also Callanan Road Improvement Co. v. United States, 345 U.S. 507, 513, 73 S.Ct. 803, 97 L.Ed. 1206 (1953).

■ Distinct from the nonreviewable order originally granting petitioners' permits is the order in question here invoking condition (5) which all parties concede is reviewable. Petitioners assert the invalidity of this order on the ground that it constituted an "amendment, cancellation, suspension, or revocation" of their certificate and therefore, under section 801,[11] required prior Presidential approval. There is no merit to this contention since the implementation of condition (5) in no way could modify or diminish the scope of an operating permit which at all times was subject to that condition. Moreover, the President previously had expressly approved the permits containing condition (5) which by its terms cannot be read to contemplate another Presidential approval of its invocation.

■ Petitioners also contend that the Board's order constituted a de facto revocation, modification or suspension and is invalid since it was issued without the notice and hearing required by section 402(f) of the Act (49 U.S.C. § 1372(f)).[12] This is similar to the first

7. Section 1006(a) provides in full:
   Any order, affirmative or negative, issued by the Board or Administrator under this chapter, *except any order in respect of any foreign air carrier subject to the approval of the President as provided in section 801 of this Act,* shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia upon petition, filed within sixty days after the entry of such order, by any person disclosing a substantial interest in such order. After the expiration of said sixty days a petition may be filed only by leave of court upon a showing of reasonable grounds for failure to file the petition theretofore. (Emphasis added.)

8. Dan-Air br. at 14; reply br. at 1.

9. Section 801 (49 U.S.C. § 1461) provides in full:
   The issuance, denial, transfer, amendment, cancellation, suspension, or rev-

ocation of, and the terms, conditions, and limitations contained in, any certificate authorizing an air carrier to engage in overseas or foreign air transportation, or air transportation between places in the same Territory or possession, or any permit issuable to any foreign air carrier under section 402, shall be subject to the approval of the President. Copies of all applications in respect of such certificates and permits shall be transmitted to the President by the Board before hearing thereon, and all decisions thereon by the Board shall be submitted to the President before publication thereof.

10. *See* note 2, *supra.*

11. *See* note 9, *supra.*

12. Section 402(f) provides as follows:
    Any permit issued under the provisions of this section may, after notice and hearing, be altered, modified, amended, suspended, canceled, or revok-

claim. Again, the simple answer is that the invocation of condition (5) was not in any realistic sense a revocation, modification or suspension of permits which were issued subject to this express condition enabling the Board to take this very action. This order is in complete accordance with the provisions of these permits and in no way diminishes their operating authority.

■ Petitioners argue further that the Board, in entering its order failed to comply with the literal terms of condition (5). They claim that the phrase ". . . if it finds such action to be in the public interest" requires a formal finding made on an evidentiary record. This, however, does not comport with a common sense reading of the provision especially in light of its essential purposes. Condition (4) made these permits subject to the Board's affinity regulations. Condition (5) merely allowed the Board, in those cases where it had some reason to believe that its regulations were being violated, to require that proof of compliance be submitted in advance of the particular flight. Since condition (5) contemplates a decision without a hearing, the term "finds" is better interpreted not as the legal term of art encompassing a formal evidentiary hearing, but rather as a broad determination or conclusion that there is a rational basis to believe that violations of the Board's regulations are in fact occurring. Here the order of the Board indicates that it had made such a determination and proceeded to act in strict

compliance with the terms of condition (5). No further finding is required.

There is also a lack of substance to the argument that the order is invalid since condition (5) dispenses only with the need of a *hearing* but says nothing about *notice*. Clearly notice would serve little purpose where the Board is under no compulsion to consider the arguments and objections of the parties affected. We find that condition (5) in providing for summary Board action without hearing impliedly dispenses with any formal notice requirements.[13]

■ Lastly, BMA alleges discriminatory enforcement in the Board's implementation of this condition only with respect to certain British air carriers (BMA br. at 50). It must be emphasized, however, that the Board consistently has disclaimed any punitive design in the issuance of this order. As the Board stated in its order dismissing BMA's petition for reconsideration, the order is designed to aid the carriers in complying with regulations they have admittedly found difficult to enforce on their own and, if the carriers are in fact complying with Board regulations, there is no reason to withhold approval for proposed charters.[14] Moreover, the Board indicated that it was proceeding on an ad hoc basis as efficiently as practicalities would permit.[15] Even had this order been issued in a punitive context, BMA has failed to show the "patent abuse of discretion" necessary to establish a case of discriminatory enforcement. F.T.C. v. Universal-Rundle Corp.,

---

ed by the Board whenever it finds such action to be in the public interest. Any interested person may file with the Board a protest or memorandum in support of or in opposition to the alteration, modification, amendment, suspension, cancelation, or revocation of a permit.

13. Arguments and objections of the parties may be heard on petition for reconsideration of the Board's order as BMA in fact did in this case.

14. Order 72-7-44 denying BMA's petition for reconsideration expressly adopts the reasoning of Order 72-5-35 dealing with

Donaldson International Airways in an identical case.

15. ". . . it is apparent that the Board cannot and need not investigate everything at the same time. The Board must necessarily deal with some things first and its power to investigate and deal with emergent matters of greatest seriousness at the outset cannot be defeated because other matters of a similar nature remain for investigation at a later date." C.A.B. Order 72-5-35 incorporated by reference in Order 72-7-44.

414

387 U.S. 244, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967).

The Board's actions are accordingly affirmed and therefore we need not consider the propriety of the District Court's denial of the preliminary injunction.

Affirmed.