**UNITED VAN LINES, INC., Petitioner,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Respondents.**

No. 75–1730.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1976.

Decided Dec. 3, 1976.

Rehearing Denied Dec. 28, 1976.

---

Homer S. Carpenter of Rice, Carpenter & Carraway, Washington, D. C., for petitioner; Gregory M. Rebman of Rebman & Rebman, St. Louis, Mo.; John C. Bradley, Washington, D. C., on brief.

Alan J. Thiemann, I. C. C., Washington, D. C., for I. C. C.; Arthur J. Cerra, Gen. Counsel, Washington, D. C., Thomas E. Kauper, Asst. Atty. Gen., Robert B. Nicholson and Lee I. Weintraub, Attys., Dept. of Justice, Washington, D. C., on brief.

Before LAY and WEBSTER, Circuit Judges, and URBOM, District Judge.*

WEBSTER, Circuit Judge.

United Van Lines, Inc., a commercial carrier licensed to transport household goods in interstate commerce, petitions for review of an order of the Interstate Commerce Commission which required it to cease and desist from operating in violation of the "Sub-No. 8" Household Goods Regulations, 49 C.F.R. §§ 1056.1 et seq., and imposed a thirty day suspension of certain of its authorizations. The essence of United's petition is that its compliance with the regulations was measured by a standard different from that applied to two other household goods carriers and that the sanction imposed was thus arbitrary and discriminatory. We affirm the order of the Interstate Commerce Commission.

In 1970, the Commission, in an attempt to assure improved service for individuals shipping goods by household goods carriers, promulgated certain consumer protection regulations known as the "Sub-No. 8" Household Goods Regulations. These regulations became effective on June 1, 1970, and currently affect all carriers licensed to transport household goods in interstate commerce. Investigations were subsequently undertaken by the Commission pursuant to 49 U.S.C. §§ 304(c) and 312(a) to determine whether carriers were in fact in compliance with the regulations. On August 31, 1972, the Commission initiated such an investigation to determine whether United had (1) failed to comply with the Sub-No. 8 regulations, (2) granted concessions to shippers by failing to collect applicable tariff rates and charges for certain services performed or provided as a part of the transportation of household goods, and (3) failed to have the declared valuation of the goods shipped inserted on the bill of lading in the shipper's own handwriting in violation of 49 C.F.R. § 1307.201(c).

Hearings were instituted on January 8, 1973, culminating in an initial decision by the Administrative Law Judge on October 1, 1973. United was held to be in past and present noncompliance with both the Household Goods Regulations and 49 C.F.R. § 1307.201(c). A cease and desist order was the sole recommended remedy.

Exceptions to the initial decision and replies thereto were filed by both the Bureau of Enforcement and United. The Commission, by its Report and Order of February 26, 1975, modified the Administrative Law Judge's findings of fact and declined to follow his recommendation as to penalty. Finding that a continuous pattern of violations was shown and that this was indicative of United's negative attitude as to compliance to the extent of willful violation, the Commission suspended for thirty days United's authority to transport certain household commodities, while maintaining

* The Honorable Warren K. Urbom, Chief District Judge, United States District Court for the District of Nebraska, sitting by designation.

the cease and desist order.[1] *United Van Lines, Inc., Investigation and Revocation of Certificate,* 121 M.C.C. 86 (1975).

A petition for reconsideration was denied by the Commission in an order entered August 26, 1975, with an explicit finding that the order was in accordance with the evidence and the applicable law. On October 2, 1975, the Commission entered an order granting United a stay of the order pending judicial review.

In substantially concurrent investigations, the Commission had sought to establish that North American Van Lines, Inc. and Global Van Lines, Inc. were also operating in noncompliance with the Sub-No. 8 regulations. In its petition for review, United's sole contention is that the instant order of the Commission is an arbitrary and capricious abuse of discretion because it results in a disparate sanction against United as compared with the treatment accorded other household goods carriers North American and Global.

■■■■ The applicable standard of judicial review of administrative sanctions requires assessment of the ICC order according to the "fundamental principle * * * that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence.'" *American Power & Light Co. v. Securities and Exchange Commission,* 329 U.S. 90, 112, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946), *quoting Phelps Dodge Corp. v. National Labor Relations Board,* 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed.2d 1271 (1941). *See Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973).[2] "The employment

of a sanction within the authority of an administrative agency is thus not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases," *Butz v. Glover Livestock Commission Co., supra,* 411 U.S. at 187, 93 S.Ct. at 1459; rather, the selection of remedy should be overturned only if it can be found "unwarranted in law or * * * without justification in fact * * *." *American Power & Light Co. v. Securities and Exchange Commission, supra,* 329 U.S. at 112–13, 67 S.Ct. at 146. *See Butz v. Glover Livestock Commission Co., supra,* 411 U.S. at 185–86, 93 S.Ct. 1455; *Federal Trade Commission v. Universal-Rundle Corp.,* 387 U.S. 244, 250–51, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967); *Moog Industries, Inc. v. Federal Trade Commission,* 355 U.S. 411, 413–14, 78 S.Ct. 377, 2 L.Ed.2d 370 (1958); *Federal Communications Commission v. WOKO,* 329 U.S. 223, 227–28, 67 S.Ct. 213, 91 L.Ed.2d 204 (1946); *Phelps Dodge Corp. v. National Labor Relations Board, supra,* 313 U.S. at 194, 61 S.Ct. 845. *See also,* 4 K. Davis, Treatise on Administrative Law § 30.10, at 250–51 (1958).

Within these limitations on judicial review of the sanction imposed on United, we proceed to a discussion of the implications of the investigations of North American and Global.

### The North American Case

The history of the North American litigation is amply recited in *North American Van Lines, Inc. v. Interstate Commerce Commission,* 386 F.Supp. 665, 670–75 (N.D. Ind.1974). In September of 1972, the Commission instituted an investigation of North American Van Lines, charging violations of

---

1. The portion of United's authority that was suspended involved "transportation by motor vehicle, in interstate or foreign commerce, of furniture, fixtures, equipment, and the property of stores, offices, museums, institutions, hospitals, or other establishments, when a part of the stock, equipment, or supply of such stores, offices, museums, institutions, hospitals, or other establishments." This authority is commonly termed that of "proviso (2)" commodities or shipments. *See* 49 C.F.R. § 1056.1(a)(2).

2. In *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973), the Supreme Court reversed the holding of this Court in *Glover Livestock Commission Co. v. Hardin,* 454 F.2d 109, 115 (8th Cir. 1972), that a remedy imposed by the Secretary of Agriculture was improper because it would not "achieve * * * uniformity of sanctions for similar violations."

the Sub-No. 8 regulations as well as other household goods regulations. That year, North American had also filed several applications for certificates of public convenience and necessity with the Commission. In considering such applications, the Commission was required by 49 U.S.C. § 307(a) to determine whether the carrier was "fit, willing, and able properly to perform the service proposed."

On March 5, 1975, the same day as the release of the order under review, the Commission held North American to be in violation of the Sub-No. 8 and other household goods regulations. *North American Van Lines, Inc.—Investigation and Revocation of Certificates,* 121 M.C.C. 126 (1975). A cease and desist order was imposed, but with reference to the Sub-No. 8 regulations, the Commission withheld its findings pending completion of a special project to determine whether compliance with the regulations by carriers exercising reasonable effort and due diligence was possible.

The genesis of this project was a professional study initiated by North American for the purpose of identifying problem areas and prescribing pragmatic procedures to be used in fulfilling the regulations. The Commission agreed that a joint effort was needed to determine whether the existing standards were realistic and, if not, to aid in formulating "realistic standards of service which carriers are capable of meeting." *North American Van Lines, Inc., supra,* 121 M.C.C. at 136. Final determination as to North American's compliance was therefore postponed until the results of the study could be considered. There was to be no determination of the willfulness of the alleged violations until the question of North American's ability to comply had been resolved. On December 22, 1975, the household goods regulations investigation of North American was formally consolidated with the other portions of the litigation, in recognition of its relevance to the ultimate issue of fitness. *North American Van*

*Lines, Inc.—Investigation and Revocation of Certificates,* No. MC–C–7901 (Dec. 22, 1975), slip op. at 5–6.

In its petition for reconsideration before the Commission, United requested participation in a professional study similar to that involved in *North American,* but its request was denied without reference to the study. United cannot contend that the Commission imposed upon it a sanction disparate to that placed on North American, because no sanction has as yet been ordered in that case. In addition, the Commission's agreement to participate in the North American study was rescinded in the order dated December 22, 1975, because North American had made no preparation to go forward with the professional study. *See North American Van Lines, Inc.—Investigation and Revocation of Certificates,* No. MC–C–7901 (Dec. 22, 1975), slip op. at 6. There is thus no longer any basis for contending that the Commission's agreement to participate in this study rendered the sanctions imposed against United arbitrary.

### The Global Case

The Commission brought a civil action against Global Van Lines, Inc. in the Central District of California seeking an injunction requiring Global to comply with the Sub-No. 8 regulations. *Interstate Commerce Commission v. Global Van Lines, Inc.,* Civil Action No. 72–3020–WMB (C.D. Cal.1975).[3] The Commission entered a consent decree with Global which enjoined Global against future violation of the regulations and enumerated a specific standard for compliance. The standard for satisfactory performance was set forth in an "Agreement" attached to the injunction, which separated the Sub-No. 8 regulations into 202 performance requirements applicable to each shipment transported, with complete compliance earning a perfect score of 100 performance points for the carrier. A minimum compliance level to avoid con-

**3.** The Commission's Bureau of Enforcement has authority to seek injunctive relief against carriers in noncompliance with Commission regulations, 49 U.S.C. § 322(b), and Bureau policy dictates that such action be taken where carriers are in egregious violation of various household goods regulations and time demands immediate enforcement.

tempt sanctions was deemed to be 90 performance points per shipment.

In its petition for reconsideration before the Commission, United requested the prescription of a compliance standard, citing the Commission's agreement in the *Global* case. United applied the formula used in *Global* to its own violations of the Sub-No. 8 rules and, during 113 separate shipments, allegedly achieved an average of 98.2 performance points per shipment, placing it well over the minimum level of performance required of Global. The Commission denied the petition and maintained its suspension of United's operating authority without reference to the performance standard in the *Global* case. United now argues that by the *Global* decree, the Commission "quite firmly committed itself" to and "established a standard for compliance with the Sub-No. 8 rules" that differed from the full compliance standard applied in the proceedings involving United.

■ This argument grants unwarranted breadth to the precedential nature of a consent decree. Such a decree is effectively an agreement between the parties to the action to terminate that specific litigation under certain stipulated conditions. *See generally United States v. Armour & Co.,* 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971); *Coca-Cola Co. v. Standard Bottling Co.,* 138 F.2d 788 (10th Cir. 1943); *United States v. General Adjustment Bureau, Inc.,* 357 F.Supp. 426 (S.D.N.Y.1973); *United Steel Workers of America v. Copperweld Steel Co.,* 230 F.Supp. 383 (W.D.Pa.1964); *Commonwealth v. United States Steel Corp.,* 15 Pa.Cmwlth. 184, 325 A.2d 324 (1974); *Commonwealth v. Rozman,* 10 Pa. Cmwlth. 133, 309 A.2d 197 (1973). The Commission and Global essentially agreed to the issuance of a permanent injunction prohibiting Global from future violations of

certain of the Sub-No. 8 regulations. Violation of the injunction would, of course, be remedied not by the Commission, but by the contempt power of the District Court. Violation of the decree would be established in the following manner:

> *For the purpose of considering the institution of contempt proceedings* Global and ICC agree that Global shall be deemed to be in compliance with the decree entered herein if it achieves as a minimum 90 performance points on all shipments tested against the compliance formula recited in paragraph 4. * * * If a survey [of these shipments] produces [sufficient points], ICC *shall not institute or recommend the institution of contempt proceedings based on such violations.* [emphasis added]

The consent decree does not prevent the Commission from seeking, through its Bureau of Enforcement, any available administrative remedy against Global as a result of violation of the Sub-No. 8 regulations except for enforcement of the contempt penalties when Global's level of compliance does not warrant such action. The 90 per cent requirement of the consent decree thus did not establish a general standard which the Commission was required to apply in administrative investigation proceedings of Global or any other household goods carrier.[4]

### Rational Basis for Sanction

■ The Commission's original order explained that the particular sanction of suspension was selected because of the willful nature of the established violations. *United Van Lines, Inc., supra,* 121 M.C.C. at 95. No question is raised that the thirty day suspension is not within the range of sanctions that the Commission may impose for violation of its rules.[5]

**4.** As the Commission recognized in *Republic Van & Storage Co., Inc., Extension—49 States,* No. MC–110585 (Sub-No. 15) (Feb. 17, 1976), slip op. at 2:

> [T]he *Global* case resulted in a consent decree between only Global and this Commission; and * * * that agreement, which was based upon a specific factual context,

relates only to those parties and does not purport to provide a basis for decision in any other proceeding * * *.

*See also North American Van Lines, Inc.—Investigation and Revocation of Certificates,* No. MC–C–7901 (Dec. 22, 1975), slip op. at 5–6.

**5.** *See* 49 U.S.C. § 312(a).

United complains nonetheless that the Commission, in its order denying United's petition for reconsideration, failed to address itself to the apparent disparity in approach to sanctions between this case and the *North American* and *Global* cases. For the reasons previously given, neither *North American* nor *Global* represents a statement of principle or guideline that would form the basis of review of the sanctions applied in this case under the arbitrary and capricious standard. The reasons for imposing the sanction of suspension were fully explicated in the Commission's original order and are supported by substantial evidence.

> The agency must articulate a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 [83 S.Ct. 239, 246, 9 L.Ed.2d 207] (1962). While we may not supply a reasoned basis for the agency's action that the agency itself has not given, *SEC v. Chenery Corp.,* 332 U.S. 194, 196 [67 S.Ct. 1575, 1577, 91 L.Ed. 1995] (1947), we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 595 [65 S.Ct. 829, 836, 89 L.Ed. 1206] (1945).

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974); *see Warren Transport, Inc. v. United States,* 525 F.2d 148, 151 (8th Cir. 1975).

Accordingly, the petition for review is dismissed.