The SEEBURG CORPORATION, Petitioner,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 19673.

United States Court of Appeals, Sixth Circuit.

April 29, 1970.

126

Frederick M. Rowe, Washington, D. C., Kirkland, Ellis, Hodson, Chaffetz, Masters & Rowe, Washington, D. C., Chambliss, Chambliss & Hodge, Chattanooga, Tenn., Lillian K. Kubicek, Chicago, Ill., of counsel, on the brief, for petitioner.

Thomas F. Howder, Federal Trade Commission, Washington, D. C., John V. Buffington, General Counsel, J. B. Truly, Assistant General Counsel, Frederick H. Mayer, Thomas F. Howder, Attys., Federal Trade Commission, Washington, D. C., on the brief, for respondent.

Before EDWARDS, PECK and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Petitioner seeks review of an order of divestiture and an injunction against further similar acquisitions entered by the Federal Trade Commission (FTC) after hearings before a Hearing Examiner. The undisputed evidence shows that prior to 1963, both The Seeburg Corporation and Cavalier Corporation were substantial manufacturers of automatic coin vending machines for canned and bottled soft drinks, and that in that year, Seeburg acquired Cavalier and has been operating its facilities as a part of its organization ever since.

The Commission found that prior to the date of the acquisition of Cavalier, Seeburg and Cavalier were actual and potential competitors; that the appropriate markets for consideration of adverse effect of the merger upon competition were the overall market consisting of manufacturers of vending machines and a submarket of manufacturers of bottle vending machines; that before Seeburg's acquisition of Cavalier, Seeburg accounted for 13.8 per cent of the overall market and Cavalier accounted for 5.1 per cent of this market, and that after the acquisition, the combined Seeburg-Cavalier Corporation accounted for 18.9 per cent of this market. As to the bottle vending machine submarket, the Commission found these same percentages to be 15.6, 9.4 and 25 per cent, respectively. The Commission thereupon found that the Cavalier acquisition by Seeburg might have an adverse effect upon competition within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18 (1964), which provides in part as follows:

"No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

On this petition for review, Seeburg's first appellate argument concerns its contention that the record does not support FTC's findings that prior to the acquisition of Cavalier, Seeburg was an actual or a potential competitor of that company. It relies heavily upon the findings favorable to it of the Hearing Examiner which the Commission overruled.

■ We believe petitioner's argument in this regard is not well founded in either fact or law. We do not believe that this case turns on the credibility of witnesses. *Cf.* Ohio Associated Telephone Co. v. NLRB, 192 F.2d 664 (6th Cir. 1951). Nor do we think the Commission failed to review the entire record. *Cf.* Cinderella Career & Finishing School, Inc. v. Federal Trade Commission, 425 F.2d 583 (D.C. Cir. 1970). (Decided March 20, 1970). The Commission's rejection of the ultimate findings of the Hearing Examiner in this case were based upon legal conclusions drawn from essentially undisputed facts after careful review of the whole record. This it clearly has the authority to do. Universal Camera v. NLRB, 340 U.S. 474, 492–497, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Petitioner seeks to convince us that there was a submarket among the manufacturers of coin operated vending machines for bottled drinks consisting exclusively of suppliers to the Coca-Cola Company bottlers. Seeburg's point is that it has not succeeded in becoming such a supplier, that Cavalier was a Coca-Cola machine supplier, and was exclusively engaged in manufacture of machines for the Coca-Cola Company. On this issue the Commission found:

"The evidence shows that Seeburg's Choice-Vend Division whose equipment at the time had not been approved by the parent Coca-Cola Company sold bottle and can vending machines to Coca-Cola bottlers as well as to other bottlers in the period 1961 through 1965. Choice-Vend, most of whose bottle vending machine business consisted of selling to the so-called 'trade' bottlers, may well have preferred to sell more than it did to Coca-Cola bottlers upon approval by the parent company. The fact remains, nevertheless, that for the period 1961 through 1965, on an overall basis, its sales to Coca-Cola bottlers did increase. Although these sales approximated .3% of the total purchases of such equipment of Coca-Cola bottlers in 1963, transactions in excess of eighty thousand dollars cannot be accurately characterized as negligible as they were by the initial decision. It was error for the hearing examiner to give no effect as a practical matter to evidence of competition where it exists.

"As a matter of fact, Seeburg prior to the acquisition made strenuous efforts to secure approval of its machines by the Coca-Cola Company and to sell this equipment to Coca-Cola bottlers. Respondent does not deny that fact, but in effect contends, and the examiner agrees, that because it was unsuccessful in securing approval from the parent company and because its sales to these bottlers were not as large as it might like, that it did not compete with Cavalier which had a substantial portion of the Coca-Cola bottler business. The examiner's finding that there was no competition between respondent and the acquired firm will be vacated. Where two firms sell essentially the same product to the same type of customers, even though one of the vendors by virtue of its relationship with a group of customers is more successful with that group than the other, then such suppliers must nevertheless be regarded as competing with each other. Although Coca-Cola in the period preceding the acquisition may have desired to limit the number of its 'approved suppliers' this does not detract from our finding on this point. The fact that a supplier may meet a certain amount of sales resistance by some customers or groups of customers has never hitherto been considered as a justification for fragmenting the product market according

to the customers sold by different suppliers. As the Supreme Court noted in another context 'Unsuccessful bidders are no less competitors than the successful one.' It is the purpose of Section 7 to preserve buyers the choice arising out of such competition.

"The evidence further indicates that Seeburg/Choice-Vend was able in the period preceding the acquisition to make its sales presentation to Coca-Cola officials and to have its machines tested by the Coca-Cola laboratories for their operational characteristics, such as refrigeration.

"The record shows and the examiner so found that on February 5, 1962, Coca-Cola Company advised Seeburg that, although it was confident respondent would make a good supplier, approval had not been granted since Seeburg did not meet Coca-Cola's requirements for approval of new suppliers. * * *" (Footnotes omitted.)·

We do not think that as a matter of law competition is restricted entirely to instances of success. *See* United States v. El Paso Natural Gas Co., 376 U.S. 651, 660–61, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964). Seeburg had repeatedly sought to become a Coca-Cola supplier, and, indeed, made a major presentation to the Coca-Cola Company during December of 1961 seeking formal approval of the parent company. It clearly had the facilities and the know-how to compete directly with Cavalier in the exact market which Cavalier was serving.

Cavalier was a somewhat smaller organization in volume of business. It had established a good sales relationship with the Coca-Cola Company, and after 1957 did no business outside of that relationship. But the record also seems to indicate that Cavalier had the capacity and the know-how to compete in all aspects of the coin vending machine soft drink business and that its decision to limit its sales efforts to Coca-Cola was a matter of its own convenience. Under the factual situation recited above, we see

no way by which we can declare that the Commission's finding of actual and potential competition between Seeburg and Cavalier prior to acquisition was not supported by substantial evidence on the whole record. 5 U.S.C. § 706 (Supp. IV, 1965–68).

Nor do we agree that the Commission erred in either fact or law in its description of the market or submarket which it employed for the determinations referred to above. The critical elements to be considered in determining a valid product market are set forth thus in the leading case, Brown Shoe Co., Inc. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962):

"The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it. However, within this broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes. United States v. E. I. du Pont de Nemours & Co., 353 U.S. 586, 593–595, 77 S.Ct. 872, 877, 1 L.Ed.2d 1057. The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors. Because § 7 of the Clayton Act prohibits any merger which may substantially lessen competition 'in *any* line of commerce' (emphasis supplied), it is necessary to examine the effects of a merger in each such economically significant submarket to determine if there is a reasonable probability that the merger will substantially lessen competition. If such a probability is found to exist, the merger is proscribed." Brown Shoe Co., Inc. v. United States, *supra* at 325, 82 S.Ct. at 1523–1524 (Footnotes omitted.)

The overall market and the submarket found by the Commission may readily be described in terms of these criteria—but significantly, the submarket contended for by Seeburg (one consisting solely of Coca-Cola bottlers) cannot be, except by reference to the single characteristic of "distinct customers." The findings of the Commission concerning the relevant markets are affirmed.

■ It seems clear to us that there is substantial evidence of a trend toward economic concentration in both the overall vending machine manufacturing field, where in 1963 five firms did 67.1 per cent of the business, and in the submarket consisting of the manufacturing of bottle vending machines, where in the same year five firms did 78.3 per cent of the business. It also seems clear that there is substantial evidence to support the Commission's conclusion that the Cavalier acquisition by Seeburg might substantially lessen competition within the meaning of Section 7 of the Clayton Act in that it tends to eliminate a competitive entity and to increase already great concentration in "oligopolistic" markets. United States v. Philadelphia Nat'l Bank, 374 U.S. 321 (1963).

Discussing Section 7 of the Clayton Act, the Supreme Court has said:

"Section 7 is designed to arrest in its incipiency not only the substantial lessening of competition from the acquisition by one corporation of the whole or any part of the stock of a competing corporation, but also to arrest in their incipiency restraints or monopolies in a relevant market which, as a reasonable probability, appear at the time of suit likely to result from the acquisition by one corporation of all or any part of the stock of any other corporation. The section is violated whether or not actual restraints or monopolies, or the substantial lessening of competition, have occurred or are intended." United States v. E. I. du Pont de Nemours & Co., 353 U.S. 586, 589, 77 S.Ct. 872, 875, 1 L.Ed.2d 1057 (1957).

■ We have no question but that under the broad powers Congress has given the FTC and on the record in this case, divestiture is an appropriate remedy, since only by this method can Cavalier be restored as a separate competitive entity to the defined markets. Abex Corporation v. FTC, 420 F.2d 928 (6th Cir. 1970).

■ The last material issue presented by this case concerns the breadth of the Commission's order, which follows:

"IT IS FURTHER ORDERED that respondent shall for a period of ten ■ years from the date of service of this order, cease and desist from acquiring, directly or indirectly, through subsidiaries or otherwise, without the prior approval of the Federal Trade Commission, all or any part of the share capital or other assets of any corporation engaged in the manufacture and/or sale of vending machines in the United States."

Since Seeburg has shown a proclivity for repeated acquisitions, the prospective portion of the Commission's order is deemed appropriate. Abex Corporation v. FTC, *supra*.

■ However, as we have indicated, the adverse effect on competition of the Seeburg-Cavalier merger was on the manufacturing of vending machines. While the FTC has wide latitude in remedying such violations, its order must be reasonably related to the violation found. FTC v. Ruberoid Co., 343 U.S. 470, 473, 72 S.Ct. 800, 96 L.Ed. 1081 (1952). The present order may be read as prohibiting Seeburg's acquisition of any company which merely (and perhaps incidentally) sells vending machines.

The order of the Federal Trade Commission is therefore modified to read:

"IT IS FURTHER ORDERED that respondent shall for a period of ten (10) years from the date of service of this order, cease and desist from acquiring, directly or indirectly, through subsidiaries or otherwise, without the prior approval of the Federal Trade

Commission, all or any part of the share capital of any corporation engaged in the manufacture of vending machines in the United States, or capital assets pertaining to such manufacture."

*See* Abex Corporation v. FTC, *supra.*

We have examined Seeburg's argument that it was somehow denied due process of law or its rights under the Administrative Procedure Act by the fact that the FTC denied Seeburg a hearing on its contention that the complaint in this case should not issue and denied Seeburg discovery of Commission files pertaining to its (Seeburg's) proposed consent decree. These motions clearly did not apply to an adjudicatory stage of this proceeding. We believe both contentions are insubstantial and have been adequately answered in the opinion of the Commission dated October 25, 1966, and in the District Court for the Eastern District of Tennessee on Seeburg's suit for declaratory judgment and mandamus. Seeburg Corp. v. FTC, Civil Action No. 4861 (Dec. 8, 1966).

As modified above, the order of the Federal Trade Commission is affirmed and enforced.