**BRISTOL–MYERS COMPANY,**
Plaintiff-Appellant,

v.

The **FEDERAL TRADE COMMISSION**
et al., Defendants-Appellees.

**No. 304, Docket 72–1969.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 30, 1972.

Decided Nov. 10, 1972.

Gilbert H. Weil, New York City (Weil, Lee & Bergin, New York City, on brief), for plaintiff-appellant.

Christopher Roosevelt, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., William R. Bronner, Asst. U. S. Atty., Harold D. Rhynedance, Jr., Asst. Gen. Counsel, Federal Trade Commission, Alvin L. Berman, Atty., Washington, D. C., on brief), for defendants-appellees.

Before LUMBARD, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

Bristol-Myers Company appeals from an order of the United States District Court for the Southern District of New York, Arnold Bauman, J., dismissing a complaint which sought to compel the Federal Trade Commission to issue certain subpoenas allegedly required by 5 U.S.C. § 555(d).[1] We hold that the district court properly refused to grant the relief requested, and we affirm.

The factual background is not disputed. In April 1972, the Commission notified Bristol-Myers of its intention to issue a formal complaint charging the company with having employed unfair or deceptive acts or practices in commerce, in violation of sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45, 52. Specifically, the proposed complaint alleged deceptive advertising for three Bristol-Myers analgesics—Bufferin, Excedrin, and Excedrin PM.[2] Following a suggestion from the Commission, Bristol-Myers availed itself of the opportunity, authorized by statute[3] and afforded by Commission rule,[4] to negotiate a mutually satisfactory consent order agreement. Although the time apparently contemplated in the

rule for consent negotiations is 30 days, Bristol-Myers received extensions beyond this limit. After negotiations had commenced, Bristol-Myers petitioned the Commission to make subpoenas available to the company during these informal negotiations in order to facilitate the gathering of evidence relevant to the Commission's proposed remedy. The Commission denied the request on June 26, 1972, and Bristol-Myers brought this action in the district court on June 29.

■ We believe that the claim is asserted prematurely and was properly dismissed for failure to exhaust administrative remedies. Judicial review of Federal Trade Commission proceedings is governed by section 45(c) of Title 15, United States Code, which limits the power of review to final cease and desist orders and which makes review available in the courts of appeals. Section 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704, provides:

> Agency action made reviewable by statute . . . [is] subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

If formal adjudicative procedures subsequently result in a cease and desist order directed against Bristol-Myers, it seems clear that on review by this or any other court of appeals the company will have an opportunity to press the claim that it was entitled by statute to subpoenas during the informal negotiating process.[5] See Frito-Lay, Inc. v.

---

1. The statute provides in part:
 Agency subpenas authorized by law shall be issued to a party on request and, when required . . . , on a statement or showing of general relevance . . . .

2. The Commission's proposed remedy would require Bristol-Myers to expend 25% of its advertising budget, over a two-year period, on advertisements subject to FTC approval which "correct" the misimpressions fostered by past deception. "Corrective advertising" has received considerable attention in recent

commentary. See, e. g., Note, "Corrective Advertising" Orders of the Federal Trade Commission, 85 Harv.L.Rev. 477 (1971).

3. 5 U.S.C. § 554(c)(1).

4. 16 C.F.R. §§ 2.31–2.34 (1972 Supp.)

5. The company's statutory claim is an intricate one. It primarily argues that "any party" is entitled to subpoenas; that a party, under 5 U.S.C. § 551(3) is a person named as a party in an agency proceeding, including adjudication;

FTC, 380 F.2d 8 (5th Cir. 1967); cf. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 49–50, 58 S.Ct. 459, 82 L. Ed. 638 (1938).

 Of course, the administrative exhaustion doctrine is less an inflexible command than a general guideline, see, e. g., McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); where "an immediate appeal is necessary to give realistic protection to the claimed right," L. Jaffe, Judicial Control of Administrative Action 429 (1965), a court may properly carve an exception to the doctrine. Only rarely, however, will "preliminary [or] procedural . . . agency action" threaten so irreparable an injury as to justify interlocutory resort to corrective judicial process, see Texaco, Inc. v. FTC, 301 F.2d 662 (5th Cir.) (per curiam), cert. denied, 371 U.S. 822, 83 S.Ct. 40, 9 L. Ed.2d 62 (1962); and Bristol-Myers has failed to persuade us that judicial intervention would here be appropriate.[6] Although the company may have to litigate the issues raised by the proposed complaint, it concedes that this is an inadequate basis for seeking judicial redress at this juncture. Myers v. Bethlehem Shipbuilding Corp., *supra*, 303 U.S. at

51–52, 58 S.Ct. 459. Moreover, as the Commission points out, it is by no means clear that a formal complaint will ever issue on the basis of the present investigation. It is still less certain that a cease and desist order will be entered following formal adjudication[7]—during which, in any event, the company will have access to the precise investigatory tools it now seeks.

If after judicial review authorized by 15 U.S.C. § 45(c), a court of appeals agrees with the statutory claim here urged, we fail to see why the company would not receive adequate relief from an order remanding the case to allow informal negotiations to be reopened, if then desired. The company claims in effect that by that time the Commission will be so set in its views that realistic negotiation will be impossible. We do not agree. The company itself points out that the Commission has been attempting for "more than a decade" to rule unlawful the advertising claims involved here. Yet the company apparently assumes that it is still worthwhile to negotiate with the Commission, because that is the very purpose of the relief now sought. More to the point, we do not believe that the Commission will fail

that "adjudication," defined by 5 U.S.C. § 551(7), is "agency process for the formulation of an order"; and that the consent settlement procedure here looks to formulation of an order. Bristol-Myers attempts to bolster this syllogism by references to legislative history; and it finally argues that denial of subpoenas effectively deprives it of its right to engage in meaningful settlement negotiations.

6. We have carefully considered Bannercraft Clothing Co. v. Renegotiation Board, 466 F.2d 345 (D.C.Cir.1972), on which Bristol-Myers heavily relies, but find that case to be distinguishable. *Bannercraft* involved the validity of preliminary injunctions issued by district courts against continuation of administrative renegotiation of government contracts, pending determination of contractor claims to disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552. Judge Wright's opinion strongly emphasizes the unusual procedure before the Renegotiation Board, id. at 349–351, and the requirements of the Freedom of Information Act. Id. at 352. Of even greater significance was the fact that the Court of Claims, to which review of the Renegotiation Board decisions is committed, had no power to afford the necessary relief. Id. at 357. Finally, the *Bannercraft* court expressly contrasted the issues before it with Federal Trade Commission proceedings which confronted the Fifth Circuit in *Frito-Lay*, supra. Id.

7. At oral argument Bristol-Myers itself called our attention to administrative disposition of the proposed complaint issued against American Home Products Corp., 3 Trade Reg.Rep. ¶ 19,673 (FTC, June 29, 1971). In the consent order finally promulgated, id. ¶ 20,071 (FTC, August 8, 1972), the "corrective advertising" remedy, to which Bristol-Myers here objects, was apparently not included, although it had been originally proposed.

to follow in good faith an order of a court of appeals requiring reopening of informal negotiations, assuming arguendo that such an occasion might arise. Finally, negotiations at that time might be more, rather than less, fruitful: They would be based upon complete knowledge of the opponent's case, and the prospect of a second, subsequent judicial review of the merits of a contested order would provide an additional incentive to compromise.

Application of the exhaustion doctrine makes it unnecessary to resolve the merits of the company's statutory claim to subpoenas. My brothers, in their concurring opinions, go on to decide that issue, but it seems more appropriate to me to postpone full consideration of that claim until review of a final cease and desist order, should one eventuate. Cf. K. Davis, Administrative Law Treatise § 20.02, at 649 (1970 Supp.). This by no means indicates that I disagree with Judge Mansfield's persuasive analysis; I simply do not believe that we should reach the merits at this stage of the proceeding.

Finally, we have the impression that the company has not been unaware of the benefits of the delay in the administrative proceeding caused by the action in the district court and by this appeal. At oral argument, one member of the panel felt sufficiently positive about the company's intent to delay to raise the appropriateness of taxing double costs on appeal. Fed.R.App.P. 38. Our failure to do so should not be taken as an encouragement to further attempts to prolong the administrative proceedings through efforts to obtain premature judicial review. The mandate shall issue forthwith.

Judgment affirmed.

LUMBARD, Circuit Judge (concurring):

I concur in Judge Mansfield's separate concurring opinion insofar as it reaches and resolves the merits of this dispute.

MANSFIELD, Circuit Judge (concurring):

I concur in the majority opinion. However, I would also reject on the merits Bristol-Myers' statutory claim to issuance of subpoenas during informal negotiations. While a cease and desist order may not issue, history indicates the probability of such issuance and if past delay is any criterion this will inevitably be followed by a further appeal, at which time another panel will be required once more to review the same record and arguments in order to resolve the issue. Rather than countenance such shuffling back and forth, with its consequent duplication and waste, I would decide it now.

As the majority opinion indicates, fn. 5, Bristol-Myers' statutory claim is labyrinthian. Reduced to simplest terms the claim is that at an informal negotiating stage it is a "party" as that term is used in the subpoena statute, 5 U.S.C. § 555 and defined in 5 U.S.C. § 551, i. e., a "person" named in an "agency proceeding". The latter term is claimed to be a step in "adjudication", which is defined as an "agency process for the formulation of an order", 5 U.S.C. § 551(7). An "order", in turn, is defined as a "final disposition", 5 U.S.C. § 551(6). Since an informal negotiation can result in the issuance of an order, Bristol-Myers contends that it is a "party" within the meaning of 5 U.S.C. § 555(d).

The fatal defect in this tortuous syllogistic reasoning is that informal negotiations under 5 U.S.C. § 554(c) are not adjudicative in nature. See The Seeburg Corp. v. FTC, 8 F.T.C. Stat. & Dec. 393 (E.D.Tenn.1966), aff'd., 425 F. 2d 124 (6th Cir.), cert. denied, 400 U.S. 866, 91 S.Ct. 104, 27 L.Ed.2d 105 (1970).

"Nothing in the Administrative Procedure Act or in the basic principles of fair procedure precludes the Commission from creating and following a procedure for settling disputes without recourse to adjudication. Consent

negotiations are not a stage in adjudication but a means of establishing whether adjudication can be avoided altogether. Like investigations, consent negotiations are distinct from the adjudicative process and hence not governed by the standards which control adjudicative procedure." William H. Rohrer Inc., 64 F.T.C. Dec. 1446, 1447 (1964).

Congress intended such negotiating proceedings to be informal, without the procedures inherent in trial-type hearings (right of examination and cross-examination, findings of fact and conclusions of law). Recognizing that the formalism of trial-type proceedings might not be conducive to successful settlement negotiations, Congress left to the agencies the power to develop the precise nature of the informal proceedings that might be used to implement the statute. See S.Doc. 248, 79th Cong., 2d Sess. 24 (1946), Atty. Gen.'s Manual on the Administrative Procedure Act (1947). Pursuant thereto the FTC enacted § 3.2 of its Rules of Practice for Adjudicative Proceedings, 16 C.F.R. § 3.2, which provides in pertinent part:

"Adjudicative proceedings are those formal proceedings conducted under one or more of the statutes administered by the Commission which are required by statute to be determined on the record after opportunity for an agency hearing. The term . . . does not include other proceedings such as negotiations for the entry of consent orders . . . ."

In an informal consent negotiation pursuant to 5 U.S.C. § 554 there is no examination or cross-examination of witnesses, no findings of fact and no conclusions of law. If the negotiations are unsuccessful, no order at all can be entered. At that stage only if the Commission decides to file a complaint does an adjudicatory stage commence. If, on the other hand, the negotiation is successful, the parties present an agreement with a staff report to the full Commission, which remains on record for 30 days. If the Commission approves the agreement, a formal complaint is issued together with a consent order which recites the history of the informal negotiations. The resulting order is final for the reason that the respondent waives further adjudicatory proceedings.

The conclusion that a company engaged in informal consent negotiations is not a "party" entitled to issuance of subpoenas accords with practical experience. At such a stage the issues have not been framed. Under such circumstances to permit a person under investigation to engage in a roving subpoena expedition upon the speculation that he *might* discover something that *might* persuade the agency to consent to his proposal could lead to substantial abuse, waste and delay.

Since Bristol-Myers' contentions are meritless, I would act now to foreclose the renewal of the issue upon a later appeal from a final cease and desist order.