**ACTION ON SAFETY AND HEALTH, et al., Appellants,**

v.

**FEDERAL TRADE COMMISSION, Appellee.**

**No. 73–1266.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1974.

Decided April 17, 1974.

---

Peter H. Meyers, Washington, D.C., with whom John F. Banzhaf, III, Washington, D.C., was on the brief, for appellants.

James P. Timony, Atty., F. T. C., for appellee. Harold D. Rhynedance, Jr., · Asst. Gen. Counsel, F. T. C., Nicholas S. Reynolds, Atty., F. T. C., Howard E. Shapiro, Atty., Dept. of Justice, and Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, were on the brief, for appellee.

Before WRIGHT and TAMM, Circuit Judges, and WYZANSKI,* United States Senior District Judge for the District of Massachusetts.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

TAMM, Circuit Judge:

Action on Safety and Health, a consumer protection organization, appeals from an order of the United States District Court for the District of Columbia, per Richey, J., dismissing a complaint which sought 1) review of the Federal Trade Commission's (hereafter "Commission") denial of intervention in a pre-complaint consent negotiation; and 2) broad declaratory and injunctive relief concerning the Commission's consent order procedures generally. We hold that the District Court properly dismissed appellants' claims, and the judgment is therefore affirmed.

Before reviewing the factual background, it may be helpful to discuss briefly the Commission's consent order procedure contained in sections 2.31 to 2.35 of the Commission's Rules of Practice, 16 C.F.R. §§ 2.31–2.35 (1973). Under these rules the Commission may notify a "proposed respondent" of its intention to institute a formal proceeding against him. Such notification contains a form of the proposed complaint which the Commission will issue, as well as the proposed order which the Commission will seek. If the proposed respondent elects, within 10 days, to attempt a settlement, negotiations begin between the Commission's staff and the proposed respondent. If the parties are unable to agree, the Commission may commence formal adjudicative procedure pursuant to 16 C.F.R. § 3.11 (1973). If, however, an agreement is reached and accepted by the Commission, the provisionally accepted consent order is placed on the public record for a period of 30 days, during which time any interested party may file comments or views with the Commission. After reviewing any such public comments, the Commission may withdraw its acceptance of the proposed order or conclude the proceeding by final acceptance of the consent order either as originally proposed or as modified in light of comments received.

The facts underlying this appeal are not in dispute. On October 12, 1972, the Commission, pursuant to 16 C.F.R. § 2.-31, declared its intention to issue a complaint charging Volvo, Inc. and others with violation of § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1970). The announcement was accompanied by both a proposed complaint and a proposed order. In sum, the complaint alleged that Volvo, Inc. had made false and deceptive advertising claims concerning the economy and durability of Volvo automobiles. The proposed order would have required Volvo, Inc. to cease and desist from making such claims unless it could substantiate the claims with appropriate facts.

At the request of Volvo, pursuant to 16 C.R.F. § 2.32, pre-complaint consent negotiations were begun. On November 6, 1972, during the negotiation period, appellants filed a motion with the Commission for leave to intervene in the negotiations. This motion[1] was denied by the Commission on December 14, 1972.

The Volvo-Commission negotiations resulted in a consent order which was submitted to the Commission on November 17, 1972. On January 10, 1973, appellants filed their complaint in District Court seeking: 1) review of the Commission's denial of intervention in the *Volvo* matter; 2) a declaration that the Commission's present consent negotiation procedures were constitutionally defective due to insufficient public participation; and 3) injunctive relief to prevent the Commission from utilizing the allegedly unconstitutional procedures until such procedures were revised to provide for greater public participation.

On January 29, 1973, after oral argument, the District Court issued an order dismissing the complaint. The District Court found, in pertinent part:

> [I]t appearing to the Court that it lacks jurisdiction of the subject matter hereof, for the reason that a grant

---

1. Appellants additionally filed a Motion for Stay of Consent Negotiations until the Commission could rule on their motion for inter-

vention; both motions were denied December 14, 1972.

or denial of intervention in Commission non-adjudicative consent negotiations is entirely discretionary with the Commission and is not judicially reviewable; and that no showing has been made that defendant has clearly violated an important constitutional or statutory right of plaintiffs since the commission's consent order procedure, 16 C.F.R. sections 2.31–.35, affords plaintiffs ample and meaningful opportunity to comment on executed consent agreements prior to final acceptance or rejection of such agreements by the Commission . . . .[2]

Appellants noted their appeal to this court on February 1, 1973, and moved the District Court for an injunction pending appeal. The District Court denied the motion.[3] On March 13, 1973, the Commission provisionally accepted the proposed consent agreement and, pursuant to 16 C.F.R. § 2.34(b) placed the agreement on the public record for 30 days, thereby providing opportunity for public comment before the order was finally accepted. Appellants, on April 23, 1973, moved this court, under Rule 8(a) Fed.R.App.P., for an order staying the Commission from finally accepting the consent agreement pending appeal. This court denied appellants' motion for stay.[4] After the period for public comment had ended, the Commission, on June 26, 1973, issued the final order in the *Volvo* matter.

The first of appellants' two arguments before this court is that the trial court erred in finding that the grant or denial of intervention in consent negotiations is "entirely discretionary with the Commission and is not judicially reviewable."

Appellants admit that the sole *express* grant of judicial review in the Federal Trade Commission Act provides for review only of cease and desist orders and only at the request of respondents thereto.[5] However, appellants rely on cases such as Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), arguing that an explicit provision for review of certain enumerated types of administrative action does not necessarily preclude review of non-enumerated actions.[6] Thus, it is argued, unless the FTC Act contains "clear and convincing evidence" of an intent to withhold review, review must be granted.

■■ We find that appellants' analysis, with its emphasis on a broad presumption favoring judicial review, is misleading in deciding the question presented. The question before us is not whether appellants have a broad right to seek review of Commission orders but whether review of this agency action is precluded by law. One who must rely upon the APA review provisions to overcome the silence of a particular organic statute must take the good with the bad. The statute and the cases make it clear that if an action is "committed to agency discretion by law," judicial review is not available. Our reading of Abbott Laboratories v. Gardner, *supra*, convinces us only that if a particular organic statute is silent on the question of judicial review, courts should recognize the basic presumption favoring judicial review, embodied in the Administrative Procedure Act, "so long as . . . *the action is not committed by law to agency*

---

2. Action on Safety and Health, et al. v. FTC, Civil Action No. 49–73, D.D.C., Order (unpublished) filed January 29, 1973 at 1–2; J.A. at D–1 to D–2.

3. *Id.*, Order filed February 14, 1973.

4. Order of June 11, 1973.

5. Brief of Appellants at 13. The Federal Trade Commission Act, 15 U.S.C. § 45(c) provides in pertinent part:

Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States . . . .

6. Brief of Appellants at 13–15.

*discretion,* 5 U.S.C. § 701(a)."[7] Abbot Laboratories v. Gardner, *supra,* at 140 (emphasis supplied). *See, e. g.,* Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 317, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958); Curran v. Laird, 136 U.S.App. D.C. 280, 420 F.2d 122 (1969); United States v. One 1961 Cadillac, 337 F.2d 730 (6th Cir. 1964); K. Davis, Administrative Law Treatise § 28.16 at 64–65 (1970 Supp.). Our inquiry must focus on the precise question of whether the power to grant or deny intervention in a consent decree negotiation has been "committed to agency discretion by law." If it has been so committed, § 701(a)(2) of the APA must control and judicial review is precluded.[8] Although the order of the trial court did not specifically mention § 701(a)(2) of the APA, we are satisfied that the trial court relied upon this provision in dismissing appellants' claim for lack of jurisdiction.

The action of the Commission here under examination is the denial of appellants' motion to intervene in ongoing negotiation proceedings. The Federal Trade Commission Act is silent as to intervention in such consent negotiations. The Act speaks only of intervention in adjudications.[9] The Commission's Rules of Procedure make it clear that "Adjudicative proceedings . . . [do] not in-

clude . . . negotiations for the entry of consent orders."[10] The United States Court of Appeals for the Second Circuit has held that the Commission's consent order procedure was established pursuant to § 554(c) of the Administrative Procedure Act[11] and that such negotiation proceedings are clearly not adjudicative in nature. The Second Circuit stated:

> Nothing in the Administrative Procedure Act or in the basic principles of fair procedure precludes the Commission from creating and following a procedure for settling disputes without recourse to adjudication. *Consent negotiations are not a stage in adjudication* but a means of establishing whether adjudication can be avoided altogether. Like investigations, *consent negotiations are distinct from the adjudicative process and hence not governed by the standards which control adjudicative procedure.*[12]

When it passed § 554(c) of the APA, Congress clearly intended that the development of informal consent decree procedures be left to the individual agency's discretion. The court in Bristol-Myers v. FTC, *supra,* discussed the question of Congressional intent with regard to consent decree procedures, and stated:

> Congress intended such negotiating proceedings to be informal, without

---

7. The Administrative Procedure Act exempts from judicial review "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (1970).

8. Professor Davis makes it clear that inquiry must focus on the *action* taken. He states:
   The troublesome problem is not whether some administrative action is unreviewable because it is "committed to agency discretion by law" but is *how to discover what particular action is so committed and what is not.*
   K. Davis, Administrative Law Treatise § 28.16 at 965 (Supp.1970) (emphasis added). This analysis has been adopted by other courts. Ferry v. Udall, 336 F.2d 706 (9th Cir. 1964), cert. denied, 381 U.S. 904, 85 S. Ct. 1449, 14 L.Ed.2d 286 (1965).

9. 15 U.S.C. § 45(b) (1970).

10. 16 C.F.R. § 3.2 (1973).

11. 5 U.S.C. § 554(c) (1970) provides:
    (c) The agency shall give all interested parties opportunity for—
    (1) the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit; and
    (2) to the extent that the parties are unable so to determine a controversy by consent, hearing and decision on notice and in accordance with sections 556 and 557 of this title.

12. Bristol-Myers Co. v. FTC, 469 F.2d 1116, 1119–1120 (2d Cir. 1972) (emphases added), *quoting* In the Matter of William H. Rohrer, Inc., 64 F.T.C. 1446 (1964); *accord,* The Seeburg Corp. v. FTC, 8 F.T.C. Stat. & Dec. 393 (E.D.Tenn.1966), aff'd, Seeburg Corp. v. FTC, 425 F.2d 124, 130 (6th Cir.), cert. denied, 400 U.S. 866, 91 S.Ct. 104, 27 L.Ed.2d 105 (1970).

the procedures inherent in trial-type hearings (right of examination and cross-examination, findings of fact and conclusions of law). *Recognizing that the formalism of trial-type proceedings might not be conducive to successful settlement negotiations, Congress left to the agencies the power to develop the precise nature of informal proceedings* that might be used to implement the statute. See S.Doc. 248, 79th Cong. 2d Sess. 24 (1946), Atty. Gen.'s Manual on the Administrative Procedure Act (1947).

\* \* \* \*

In an informal consent negotiation pursuant to 5 U.S.C. § 554 there is no examination or cross-examination of witnesses, no findings of fact and no conclusions of law. If the negotiations are unsuccessful, no order at all can be entered. At that stage only if the Commission decides to file a complaint does an adjudicatory stage commence. If, on the other hand, the negotiation is successful, the parties present an agreement with a staff report to the full Commission, which remains on record for 30 days.

469 F.2d at 1120 (emphasis added).

We find the reasoning of the Second Circuit in Bristol-Myers v. FTC, *supra,* to be sound. Congress granted great discretion to the Commission to determine whether a potential respondent has violated the Act and whether a proceeding by the Commission against the violator would be in the public interest.[13] Neither the Federal Trade Commission Act nor the Commission's Rules of Procedure grant appellants any right to intervene in consent negotiations. Rather, the power to prescribe consent negotiation procedure is part of the general enforcement power of the Commission, and such enforcement decisions are generally not subject to judicial review.[14] In this area, concerned as it is with questions of administrative policy and allocation of scarce Commission resources, "the Commission alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically." Moog Industries, Inc. v. FTC, 355 U.S. 411, 413, 78 S.Ct. 377, 379, 2 L.Ed.2d 370 (1958).[15]

■ Whether or not the denial of appellants' motion to intervene in the negotiations is agency action committed entirely to agency discretion is a question which must be answered by viewing the *source* of the Commission's power to act. We believe that the whole consent negotiation procedure was promulgated by the Commission pursuant to its broad enforcement discretion.[16] As such, we

---

13. 15 U.S.C. § 45(b) (1970). *See, e. g.,* Jacob Siegel Co. v. FTC, 327 U.S. 608, 611–612, 66 S.Ct. 758, 90 L.Ed. 888 (1946).

14. *See, e. g.,* NLRB v. Indiana & Michigan Electric Co., 318 U.S. 9, 63 S.Ct. 394, 87 L.Ed. 579 (1943); Kixmiller v. SEC, 160 U.S.App.D.C. 375, 492 F.2d 641, 645 (1974) and cases cited therein.

15. *Accord,* FTC v. Universal Rundle Corp., 387 U.S. 244, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967). The holdings in these two cases are not contrary to the result reached today. In both cases appellants were respondents under cease and desist orders and complained of failure to prosecute competitors. They were not, as here, merely aspiring intervenors in a *non-adjudicatory* setting.

16. Appellants have directed our attention to various cases which they contend stand for the proposition that the APA does not preclude review in this case. Examination of these cases reveals that none concerns the *non-adjudicative consent negotiation* procedure. Pepsico, Inc. v. FTC, 472 F.2d 179 (2d Cir. 1972) concerned intervenors who sought *review of a cease and desist order* which purportedly affected their rights directly. In Rettinger v. FTC, 392 F.2d 454 (2d Cir. 1968) and Robertson v. FTC, 415 F.2d 49 (4th Cir. 1969) petitioners seeking review were *actual respondents* in past proceedings which culminated in cease and desist orders. The question presented in both cases was whether proceedings begun subsequent to the issuance of cease and desist orders were "reopened adjudicatory proceedings" or "compliance" proceedings. The circuit courts in both cases denied jurisdiction. In Elmo Division of Drive-X Co., Inc. v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342

hold that the decision to grant or deny intervention is an agency action committed to agency discretion and therefore is specifically exempt from judicial review under § 701(a)(2) of the APA.

Appellants' second argument is that the Commission's present consent order rules do not provide the public with "constitutionally required 'meaningful participation' in consent proceedings."[17] It is their position that "the 'meaningful' participation guaranteed by the First and Fifth Amendments requires the Commission to adopt procedures designed to permit greater public participation . . . ."[18] This result, it is argued, is compelled by "both the due process interest in fairness and the first amendment interest in public participation in decisions which affect the public."[19] The trial court dismissed this portion of the complaint stating that "no showing has been made that defendant has clearly violated an important constitutional or statutory right of plaintiffs since the Commission's consent order procedure . . . affords plaintiffs ample and meaningful opportunity to comment on executed consent agreements prior to final acceptance or rejection of such agreements by the Commission . . . ."[20]

■■ The Commission's rules do not deny due process to appellants because appellants have not demonstrated an interest in the Commission proceedings sufficient to make a due process analysis possible. To put it another way, the mere incantation of the phrase "due process" is not enough to require judi-

cial examination of the Commission's rules. Cases recently decided by the Supreme Court, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), make it clear that a deprivation cognizable under the Fifth Amendment due process clause still must be a deprivation of life, liberty, or property. In Goldberg v. Kelly, *supra*, there was no dispute that the termination of welfare benefits to appellees "adjudicate[d] important rights" of a property nature.[21] The Court in *Goldberg* stated:

> [C]onsideration of what procedures due process may require under any given set of circumstances must *begin with a determination of the precise nature* of the government function involved as well as *of the private interest that has been affected by governmental action.*[22]

It is incumbent upon one who invokes the due process clause against government action to denominate specifically the deprivation he has suffered. Only then can a court ascertain what procedural due process is required. *See* Blackwell College of Business v. Attorney General, 147 U.S.App.D.C. 85, 454 F.2d 928, 932–933 (1971); Bell v. Burson, 402 U.S. 535, 540, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

A careful reading of appellants' papers, both those filed in the trial court and those filed here, discloses that at no time have appellants stated with specificity what they have been deprived of by the Commission's action. Clearly it

---

(1965), appellant was a *party to a prior consent decree,* and the question was whether the district court had jurisdiction to entertain a suit by appellant to enforce procedural rights which the Commission had granted to him in its prior decree.

Thus, none of these cases has any bearing whatever on the question *sub judice.*

17. Brief of Appellants at 20. It is not entirely clear, but apparently appellants assert that the Commission procedure is constitutionally defective in all events, regardless of whether they are entitled to judicial review

of the Commission order denying them intervention in this particular matter.

18. *Id.*

19. *Id.* at 21.

20. Action on Safety and Health v. FTC, *supra* note 2 at 1–2; J.A. at D–1 to D–2.

21. Goldberg v. Kelly, 397 U.S. 254, 261–262 (1970).

22. *Id.* at 263, *quoting* Cafeteria Restaurant Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961) (emphases added).

is not life or liberty within the meaning of the Fifth Amendment. As to a "property" interest, we can find none. Appellants here cannot sustain an allegation that Commission proceedings against Volvo may affect later private actions maintained by any individual who claims to have been injured by deceptive advertising. The Federal Trade Commission Act does not confer a private right of action on any individuals. Holloway v. Bristol-Myers Corp., 158 U.S.App.D.C. 207, 485 F.2d 986 (1973).

Appellants, instead of demonstrating deprivation of a "property" interest, merely recite several cases which, they contend, confer on them the right to "meaningful participation" in the Commission's consent decree procedures. In each case cited by appellants, the interest protected was *first*, clearly articulated, and *second*, of a more substantial nature than the right of an undefined "public" to participate in agency enforcement proceedings at a stage prior to formal adjudication. In Goldberg v. Kelly, *supra*, the issue was termination of welfare benefits which affected the recipients' property interest in these benefits. Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) involved the right of a natural father to receive notice of the pending adoption of one of his children. In Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968), the persons who pressed a due process claim were not members of the "public," but applicants for public housing, whose rights to such housing were directly affected by the governmental action. Similarly, Blackwell College of Business v. Attorney General, 147 U.S.App.D.C. 85, 454 F.2d 928 (1971), held that the college's "approved" status was a valuable property in the nature of a license, which could not be revoked without due process protection.

In summary, we can find no merit in appellants' asserted Fifth Amendment "right to participation" in the Commission's proceedings. Before a court can evaluate the procedural due process to which a person is entitled, there must first be alleged with reasonable particularity the precise right which the government's act is said to have altered or diminished. Without such an allegation —of a right to life, liberty, or property —there is simply no constitutional claim. As we have observed *ante*, the decision to allow intervention in nonadjudicative consent decree negotiations is committed to agency discretion. The appellants cite no precedent for their assertion that they have any interest in these proceedings which would entitle them to any due process safeguards. Because they have failed to identify their right with precision, meaningful analysis is impossible. For these reasons, we believe their claim that the Commission's current Rules of Practice, 16 C.F.R. § 2.31–.35, violate the Fifth Amendment is without merit.

■ Turning now to appellants' First Amendment claim, we note that appellants' presentation to this court is singularly unenlightening.[23] In support of their inchoate claim, bottomed apparently on the *right to petition clause* of the First Amendment, appellants offer neither relevant precedent nor reasoned analysis.[24] We have, out of necessity,

---

23. Appellants devote but one short paragraph of their brief to articulation and analysis of their First Amendment claim. This paragraph states, in full:

The Supreme Court has also indicated that the right of "meaningful access to the agencies and courts" is part of the right to petition the Government, protected by the First Amendment. California Motor Transport Co. v. Trucking Unlimited, [404] U.S. [508, 511,] 92 S.Ct. 609, 612 [30 L.Ed.2d 642] (1972).

Brief of Appellants at 21.

24. Appellants' brief (*see* note 23 *supra*) cites only California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972), a case which has nothing at all to do with "public" participation in anything. That case holds that a carrier's First Amendment right to initiate a court action does not give rise to immunity from civil liability if the initiation of the law suit is itself a violation of antitrust law.

independently researched the relevant case law and find no judicial opinions to bolster appellants' case. This being the situation, we merely affirm the trial court, stating only that *if* the guaranteed right to petition the government has any application to this case, the Commission has not abridged appellants' rights by its failure to provide expanded public participation. While this resolution does not mark off the precise boundaries of the right to petition clause, we leave that task to a future day when the issue will be clarified and thoroughly briefed.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (concurring):

I am pleased to concur in Judge Tamm's excellent opinion because in my judgment it does not preclude the possibility of judicial review in all circumstances of consent orders issued by the Federal Trade Commission under 5 U.S. C. § 554(c)(1) (1970).