**The MISS AMERICA ORGANIZATION and Kenner Products, a Division of Tonka Corporation, Plaintiffs,**

v.

**MATTEL, INC., Nicholas Brady, Secretary of the U.S. Treasury, Carol Hallett, Commissioner of U.S. Customs, and Anthony Liberta, New York Regional Commissioner, U.S. Customs, Defendants.**

**No. 91 Civ. 2154 (LBS).**

United States District Court, S.D. New York.

April 24, 1991.

Weiss Dawid Fross Zelnick & Lehrman, P.C., New York City (Carol F. Simkin, of counsel), for plaintiffs.

Finnegan, Henderson, Farabow, Garnett & Dunner, Washington, D.C. (Laurence R. Hefter, of counsel), and Richards & O'Neil, New York City (Thomas I. Sheridan, of counsel), for defendant Mattel, Inc.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Sara L. Shudofsky, Asst. U.S. Atty., of counsel), for defendants Brady, Hallett and Liberta.

## OPINION

SAND, District Judge.

Plaintiffs in this action, The Miss America Organization and Kenner Products ("Kenner") have created and plan to mar-

ket a line of dolls known as "Miss America" dolls. The "Miss America" series includes five dolls—"Devon," "Tonya," "Blair," "Justine," and "Racquel"—with various accessories, which were introduced to the toy trade to compete in the lucrative fashion doll market. Kenner alleges that it has devoted a number of years to developing this product, formulated a marketing plan and has spent millions of dollars creating the "Miss America" dolls, the accessory line, packaging and promotional programs. To launch this new product line, Kenner has planned a large spring advertising campaign which will emphasize the association of the dolls with the Miss America Pageant.

Defendant Mattel, Inc. is the designer and producer of the well-known "Barbie" doll, which has been in existence in various models since 1958. Mattel has sold over 600 million "Barbie" dolls. "Barbie" represents approximately one-half of Mattel's annual sales, with over $740 million in sales worldwide in 1990. In the United States, in 1990, over 25 million "Barbie" dolls were sold to 11 million children. Market research conducted by Mattel shows that 96% of all 3–11 year old girls in the United States currently own at least one "Barbie" doll. In 1990, Mattel spent $40 million on promotional expenditures related to the "Barbie" product line.

At issue in this case is whether two of Kenner's five "Miss America" dolls infringe on the copyright of Mattel's "Barbie" doll under the applicable portions of the Copyright Act. Mattel possesses a copyright in the unpainted head sculpture of Toy No. 9720, the "Super Star Barbie," which has been registered in the United States Copyright Office and with the United States Customs Service ("Customs"). This unpainted head sculpture is used on eleven and one-half inch fashion dolls. Kenner's "Miss America" dolls are all eleven and one-half inch fashion dolls and the question is whether two of the heads on the five dolls are designed from the same mold as that used to make Mattel's "Super Star Barbie." For purposes of the alleged copyright infringement, only the "Tonya" and "Devon" heads are at issue.

Presently before this Court is plaintiff's motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65. Kenner seeks to enjoin the defendants Mattel, Inc., Nicholas Brady, Secretary of the United States Treasury, Carol Hallett, Commissioner of the United States Customs, and Anthony Liberta, New York Regional Commissioner, United States Customs (collectively "Defendants") from interfering with the importation and sale in the United States of plaintiffs' "Miss America" dolls. Plaintiffs also seek an order compelling Mattel to withdraw all previously pending claims at Customs and to bring such claims only in this Court.

Defendant Mattel suggests that plaintiffs' design and marketing of "Miss America" dolls infringes on its copyright in the "Barbie" doll in violation of the Copyright Act, 17 U.S.C. §§ 602, 603, and the Tariff Act, 19 U.S.C. § 1303 et seq. Defendants argue that the appropriate procedure for determining whether Kenner is infringing on Mattel's copyright is to follow the statutory mandate which outlines a proceeding through Customs. For the reasons discussed below, plaintiffs' motion for a preliminary injunction is denied since plaintiffs have not exhausted their administrative remedies, as required under the relevant portions of the Copyright Act.

## DISCUSSION

The threshold matter for this Court to resolve is whether plaintiffs' failure to exhaust available administrative remedies as prescribed by the Copyright Act precludes judicial review of the underlying claims in this action. Defendants argue that, regardless of any interim harm plaintiffs may suffer, this Court has no jurisdiction to hear the case until Customs has rendered a final order determining whether the "Miss America" dolls infringe on Mattel's "Barbie" copyright, pursuant to regulations promulgated by the United States Treasury Department ("Treasury"). For reasons that require some exposition, we agree.

## A. Statutory Basis for Administrative Scheme

The Copyright Act provides that "importation into the United States" of copies of copyrighted work acquired outside the United States "is an infringement of the exclusive right to distribute copies" under the Act. 17 U.S.C.A. § 602(a). In a "case where the making of the copies ... would have constituted an infringement of copyright if this title had been applicable, their importation is prohibited." 17 U.S.C.A. § 602(b). Section 603 of the Act further provides that the "Secretary of the Treasury ... shall ... make regulations for the enforcement of the provisions of this title prohibiting importation." 17 U.S.C.A. § 603(a). Those regulations may require "that the person seeking exclusion [of the imported goods] furnish proof ... that [his or her] copyright is valid and that the importation would violate the prohibition in section 602; the person seeking exclusion may also be required to post a surety bond for any injury that may result if the detention or exclusion of the articles proves to be unjustified. 17 U.S.C. § 603(b)(2)."

Pursuant to the Copyright Act, Treasury promulgated regulations setting forth the procedures to be followed by Customs in cases where there is either a clear case of piracy, see 19 C.F.R. § 133.42 or where there is "suspicion" of the importation of infringing copies, see 19 C.F.R. § 133.43. Section 133.43 of the regulations provides that if the district director "has any reason to believe that an imported article may be an infringing copy ... he shall withhold delivery" and "notify the importer." 19 C.F.R. 133.43(a). The importer then has thirty days to file a statement denying infringement and alleging that the detention of the article will result in loss or damage to him. *Id.* If such a denial is filed by the importer, Customs then notifies the copyright owner that the article will be released to the importer unless the copyright owner, within thirty days, files a written demand for the exclusion of the goods along with a "bond, in the form and amount specified by the district director, conditioned to hold the importer or owner of the imported article harmless from any

loss or damage resulting from Customs detention in the event the Commissioner of Customs ... determines that the article is not an infringing copy prohibited ... under section 602 of the Copyright Act of 1976." 19 C.F.R. 133.43(b).

If the copyright owner files the indemnification bond, the parties have thirty additional days to "submit further evidence, legal briefs, or other pertinent material to substantiate the claim or denial of infringement." 19 C.F.R. § 133.43(c)(1). The burden of proof on the question of infringement "shall be upon the party claiming that the article is in fact an infringing copy." *Id.* If Customs determines that the article in question does infringe, the district director "shall seize the imported article," 19 C.F.R. § 133.44(a). If Customs concludes that the article does not infringe, the detained merchandise is released and the district director transmits the copyright owner's bond to the importer. 19 C.F.R. § 133.44(b).

## B. Exhaustion of Administrative Remedies

The primary question for the Court is whether plaintiffs must proceed through the administrative process contained in the Copyright Act before invoking judicial review in this forum. The doctrine of exhaustion of administrative remedies is well established. *See generally* 16 Wright & Miller, *Federal Practice and Procedure* § 3942 *et seq.* (1977). The requirement that administrative remedies be exhausted received its classic statement in *Myers v. Bethlehem Shipbuilding Corporation*, 303 U.S. 41, 51, 58 S.Ct. 459, 464, 82 L.Ed. 638 (1938), when the Supreme Court rejected a claim that district court jurisdiction be recognized to forestall the burden of administrative proceedings, even though it would create irreparable injury to one of the parties. As the Court wrote, such a result would be inconsistent "with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id.* So long as there remain

effective procedures for further consideration by the agency, judicial review is limited. *See Schlesinger v. Councilman,* 420 U.S. 738, 756–57, 95 S.Ct. 1300, 1312–13, 43 L.Ed.2d 591 (1975); *National Nutritional Foods Ass'n v. Califano,* 603 F.2d 327, 332–33 (2d Cir.1979).

The Second Circuit has consistently adhered to the general rule that parties must fully litigate their claims and exhaust their administrative remedies before seeking judicial review. In *Bristol–Myers Company v. F.T.C.,* 469 F.2d 1116 (2d Cir.1972), the Court wrote that "[o]nly rarely ... will preliminary [or] procedural ... agency action threaten so irreparable an injury as to justify interlocutory resort to corrective judicial process." *Id.* at 1118. Even in instances where the impending damage may cause "grievous economic loss" as a result of the delay inherent in agency proceedings, courts have been unwilling to review interlocutory orders. *See International Waste Controls, Inc. v. Securities and Exchange Commission,* 362 F.Supp. 117, 121 (S.D.N.Y.), *aff'd,* 485 F.2d 1238 (2d Cir. 1973).

■ The purposes for the judicial application of the exhaustion doctrine are not difficult to understand. A primary objective is to avoid the premature interruption of the administrative process which is charged with applying the underlying statute in the first instance. *See McKart v. United States,* 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). This permits the development of a factual record, giving the agency the first opportunity to exercise its discretion or to apply its expertise. *See McKart,* 395 U.S. at 194, 89 S.Ct. at 1663; *Diapulse Corp. of Am. v. U.S.D.A.,* 500 F.2d 75, 78 (2d Cir.1974). Moreover, efficiency is promoted by letting the administrative process carry through to its conclusion. Often the result is that the agency's decision obviates the need for judicial intervention or at least narrows the scope of such review. *See National Nutritional Foods Ass'n,* 603 F.2d at 333.

■ Based on the strong legal precedent detailed above, this Court concludes that judicial intervention at this time would be premature. Congress has created a mechanism in the Copyright Act pursuant to which Customs will inquire whether or not a product about to be imported into the United States infringes, and the procedure for determining infringement. If this Court were to give a different reading to the statutory language, as plaintiff urges, the congressional mandate would be weakened, if not abrogated entirely. The Court would be establishing precedent, in contravention of the statute, that importers of allegedly piratical articles could disregard the directives and orders of Customs and instead immediately request preliminary relief. This is a classic case of there being an on-going administrative proceeding with issues of fact—requiring a judgment as to whether or not something is an infringement—which should be determined in the first instance by Customs.

■ Certainly, at the appropriate point, after plaintiffs have exhausted all administrative remedies and there has been the development of a factual record, any decision made by Customs is subject to judicial review and plaintiffs may pursue other remedies against Mattel.[1] There has been no representation by any party that Mattel is a financially fragile company or that it is otherwise unable to make recompense to Kenner should it be determined that the "Miss America" dolls do not infringe on Mattel's copyright.

C. *Exceptions to Exhaustion of Administrative Remedies*

■ Plaintiffs urge that the exhaustion of administrative remedies doctrine is inapplicable in this case. Kenner suggests that the Customs procedures do not afford an

---

1. Under regulations promulgated by Treasury, Customs requires that a bond be posted by the copyright owner in the amount of 120 percent of the value of the detained merchandise. The language in the regulations, however, suggests that the amount of the bond should be adequate to hold the importer harmless from any loss or damage. In this case the harms alleged, if substantiated, are of an amount that potentially exceeds 120 percent of the value of the detained goods.

opportunity to fully contest and obtain a decision regarding a seizure until 90 days after it occurs, during which time Kenner will have suffered irreparable injury. Plaintiffs suggest that when there is the lack of an adequate remedy, which results in significant harm, the injured party may be excused from the requirement of having to exhaust administrative remedies. While this Court is cognizant of plaintiffs' concerns, the case law does not support the conclusion plaintiffs suggest.

It is correct that the exhaustion of administrative remedies doctrine is not absolute and that courts have provided for some limited exceptions. In *McKart*, the Supreme Court held that in unusual cases, such as those involving criminal rights or statutory interpretation, where an immediate appeal is necessary to give otherwise missing protection to the claimed right, a court may properly make an exception to the doctrine. *See* 395 U.S. at 197, 89 S.Ct. at 1664–65. In holding that the "use of [the exhaustion] doctrine in criminal cases can be exceedingly harsh," the Court was concerned that a defendant would be stripped of an important defense and required to "go to jail" without obtaining any judicial review of what might be an invalid order by an administrative agency. *Id.* at 197, 89 S.Ct. at 1664. Furthermore, the Court concluded that the critical issue in dispute was limited to statutory interpretation and that, under the facts of the case, there was no need for the exercise of agency discretion or for the application of agency expertise. *Id.* at 198, 89 S.Ct. at 1665.

In the Second Circuit, courts that have followed the *McKart* reasoning have done so on very limited grounds and for specific reasons. In *Diapulse*, the Court concluded that a legal challenge to certain acts of the Federal Drug Administration as unauthorized as a matter of law required immediate judicial review. Since the only issue was one of law, involving statutory interpretation, the Court concluded that "agency expertise is of little help to a reviewing court." 500 F.2d at 78. As such there was no need for the agency to engage in a futile, time-consuming process of developing a detailed factual record for purpose of judicial review. On balance, the Court con-

cluded that "allowing judicial review here will not unduly disrupt the scheme of administrative review" that was promulgated by the executive branch agency. *Id.* at 78. *See also Sterling Drug, Inc. v. Weinberger*, 509 F.2d 1236, 1239 n. 8 (2d Cir. 1975).

Plaintiffs suggest that *Croton Watch Co. v. Laughlin*, 208 F.2d 93 (2d Cir.1953), provides a definitive answer to the Court in this case. We disagree. While *Croton Watch* involved a challenge to a Customs decision, the facts presented were significantly different than those of the case at bar. Most significantly, that suit was against a customs collector individually, with the Court holding that the collector could be enjoined if his refusal to permit the entry of an article is "unauthorized by statute." *Id.* at 96. The reasoning in the case offers little guidance on the right to judicial review prior to the exhaustion of administrative remedies in the context of a copyright infringement action.

■ Plaintiffs also urge that the exhaustion of administrative remedies requirement should be excused on grounds of futility. Plaintiffs assert that they have forwarded to Customs all of the data available to demonstrate independent creation of the questioned dolls. Customs, however, denies that it has prejudged the issue. Affidavit of Mr. Barry P. Miller ¶ 13. Customs has at this stage determined merely that there is a "suspicion" of infringement which meets the statutory criterion for invocation of the detention proceeding. There is therefore, no basis upon which this Court could determine that the outcome of the Customs proceedings has been predetermined such that continuation of the administrative process would be futile.

## CONCLUSION

We are satisfied that binding precedent precludes the grant of the relief sought by plaintiffs. Plaintiffs do not allege that Customs has in any way deviated from its statutory authority. Nor is there any challenge to the constitutionality of the statute, which grants to the copyright owner and Customs the extraordinary power to deter importation based on a mere "suspicion" of infringement. Thus the order of detention

based on "suspicion" enables a copyright owner and Customs to disrupt the business of the importer in circumstances where a court might well deny preliminary injunctive relief.[2]

In essence plaintiffs' claims suggest deficiencies that are directed to the statutory framework and involve the wisdom of certain specific provisions in the Copyright Act and the regulations. Perhaps it is the case that Congress, primarily concerned with clear cases of piracy, has stacked the cards unfairly against would be importers. For example, no option is offered to the importer to post a bond saving harmless the copyright owner as a condition to importation pending administrative resolution of the claim. All of these concerns, real as they may be in a particular case, do not overcome the fact that Congress created an administrative scheme which Customs is implementing and no basis has been shown for circumventing that procedure.

Perhaps in cases where alleged seasonal marketing concerns and huge advertising and promotional costs have been incurred by the importer, Customs should accelerate the progress of the administrative proceedings. Arguably, in determining the size of the bond to be posted by the copyright owner, as required in the regulations promulgated by Treasury, Customs could accomplish this result by adjusting the amount of the bond to reflect the period of time during which the importer may be sustaining damages. In any event, until Customs has determined the bond amount and plaintiffs have exhausted all administrative remedies, this Court is without jurisdiction to hear the case.

Plaintiffs' application for preliminary injunctive relief is denied.

SO ORDERED.

---

**2.** Moreover, it appears that certain equitable issues which might defeat a copyright owner's claim for judicial relief, such as laches or estoppel, will not be considered by Customs but may be raised only on an appeal from the administrative determination. In fact plaintiff urges that this Court should review the underlying claims at this juncture for this reason and because Kenner suggests federal courts have an expertise in infringement disputes at least equal to that of Customs.